Robert S. VANDERSLICE, Plaintiff,

v.

Patricia Roberts HARRIS, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 79–1426.

United States District Court,
W. D. Pennsylvania.

Magistrate's Report and Recommendation
March 6, 1980.

March 26, 1980.

---

Fredric E. Orlansky, Northwestern Legal Services, Sharon, Pa., for plaintiff.

Robert J. Cindrich, U. S. Atty., Robert C. Mitchell, United States Magistrate, Pittsburgh, Pa., for defendant.

#### SUPPLEMENTAL MEMORANDUM

ROSENBERG, District Judge.

The plaintiff, Robert S. Vanderslice, appealed from an adverse decision of the Secretary of Health, Education and Welfare on his application for disability and supplemental security income benefits. This case was referred to Robert C. Mitchell, United States Magistrate, for a report and recommendation and the Magistrate filed such a report and recommendation.

After carefully examining both the Magistrate's report and recommendation and the record, I find this to be one of those cases which seem to be harsh because the law as it applies to this particular plaintiff and the regulations promulgated by the Secretary appear to have no mercy for his pains and miseries.

The facts are set forth in the report and recommendation and I need not repeat them here. The plaintiff undoubtedly has suffered considerably because of one spinal fusion in 1971 and another in 1977, and he has been compelled to seek medical aid, hospitalization and the like for the ailments which he suffered. With the spinal condition concerning which he basically complains, he also had an attack of gastritis, which may or may not have left him entirely as healthy as he was before the attack.

I can understand the pains and suffering that he underwent. I can understand as well the fact that he has been deprived of his capability of doing the hard labor he had originally done because of his weakened physical condition due to his ailments. The medical testimony has very well described his physical condition and his ailments and the plaintiff himself has complained exceedingly about the effect of his ailments, and the belief that he is unable to perform any gainful employment. However, as the Administrative Law Judge found, and as the same was eventually summarized by the Secretary, it is obvious that while this plaintiff has been deprived of a great deal of his capabilities, he is still able to perform considerable functions in and about the home and in the community. Thus it would seem that while the plaintiff feels that he is entitled to compensation under the law for the weakened change in his physical make-up, he has not recognized the fact that he is able to perform gainful employment under the law, and it is this fact that the Administrative Law Judge and the Secretary eventually found to be the reason why his application for benefits was denied.

The United States Magistrate recognized this clearly and has presented the details in such a fashion as should have been clear to the plaintiff on why the law does not grant him benefits. But it is one of those situations where a person who suffers pain and lessened capacity is not easily persuaded that the law is right. However, the function of the Secretary was performed in accordance with law. The Magistrate recognized that too, and there is nothing that a district court judge can do to alter the situation because the plaintiff does have a competency as the vocational expert explained. Although the plaintiff may not be able to perform all of the particular jobs which the vocational expert has enumerated, he has sufficient capacity to perform certain gainful activities and be employed within these limitations as provided by law.

I, therefore, adopt the report and recommendation of the Magistrate as the Opinion of the Court. The defendant's Motion for Summary Judgment will be granted.

#### MAGISTRATE'S REPORT AND RECOMMENDATION

ROBERT C. MITCHELL, United States Magistrate.

I. *Recommendation*

It is respectfully recommended that the defendant's motion for summary judgment be granted and that the decision of the Secretary of Health, Education and Welfare denying disability and supplemental security income benefits be affirmed.

II. *Report*

Presently before the Court for disposition are cross motions for summary judgment.

On October 3, 1979, Robert S. Vanderslice, by his counsel, filed a complaint pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), for review of the Secretary's final determination disallowing his claim for a period of disability or for disability insurance and supplemental insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423 and 1381 cf.

On February 9, 1978, the plaintiff filed an application for disability and supplemental insurance benefits alleging an onset of disability in November, 1976 as a result of a spinal problem (R. 69–72, 167–170). Benefits were denied, and on June 1, 1978, the plaintiff requested reconsideration of the denial of benefits (R. 75). Upon reconsideration and in decisions dated June 6, 1978 and June 18, 1978, benefits were again denied (R. 77–78, 79–80). On July 24, 1978, the plaintiff requested a hearing (R. 34) and pursuant to that request a hearing was held on October 4, 1978 (R. 35–68). Subsequently, in a decision dated November 29, 1978, the Administrative Law Judge denied benefits (R. 22–28). On December 19, 1978, the plaintiff requested reconsideration of the denial of benefits (R. 21), and in a decision dated February 22, 1979, the Appeals Council remanded the matter to the Administrative Law Judge with directions to strike a particular exhibit (R. 20). The exhibit was stricken and in a decision dated March 13, 1979, the Administrative Law Judge denied benefits (R. 14–18). On April 9, 1979, the plaintiff requested reconsideration of this determination (R. 12) and upon reconsideration and in decisions dated May 10, 1979 and June 22, 1979, the prior decision was affirmed (R. 6, 11). Pursuant to an extension of time (R. 4) the instant complaint was filed on October 3, 1979.

In reviewing an administrative determination of the Secretary, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Secretary that the plaintiff failed to sustain his burden of demonstrating that he was disabled within the meaning of the Social Security Act. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Hargenrader v. Califano,* 575 F.2d 434 (3d Cir. 1978); *Chicager v. Califano,* 574 F.2d 161 (3d Cir. 1978).

It is provided in 42 U.S.C. Section 405(g) that:

"The Court shall have power to enter upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."

Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)," *Richardson v. Perales, supra,* 402 U.S. at page 401, 91 S.Ct. at 1427; *Dobrowolsky v. Califano,* 606 F.2d 403 (3d Cir. 1979).

At the hearing held on October 4, 1978 (R. 35–68), the plaintiff appeared with counsel (R. 37) and testified that he is 35 years old and married with two children (R. 38–39) and that he is a high school graduate (R. 38).

The plaintiff also testified that he worked as a steel industry maintenance man until he was laid off in 1974 (R. 40–41); that he worked as a school custodial helper for a year and an auto-reconditioner for about eight months (R. 42, 43) and that he tried to work as a bartender in 1977 but was unable to do so (R. 41).

In addition, the plaintiff testified that his back hurts from any movement and his legs, shoulders and arms ache (R. 43, 46, 51); that he has stomach aches and gurgling and diarrhea (R. 50); that he does some house cleaning and laundry (R. 39); that he can sit for about an hour and stand

for about a half hour but if he is moving he can stand for about two hours (R. 47); that he lays down two or three times a day (R. 48); that he takes medication for pain and for his stomach trouble (R. 48–49) and that he experiences constant dizziness and light-headedness (R. 52).

The plaintiff's wife testified (R. 53–55) that her husband generally sits around the house (R. 54) and appears to experience pain all day long (R. 54).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the finding of the Secretary that the plaintiff was not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Sections 423(d)(1)(A) as:

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

"an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence . . . 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

A "physical or mental impairment" is "an impairment that results from anatomical,

physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

It is provided in 42 U.S.C. § 1382c(a)(3) that:

"(A) an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."

"(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence . . . 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

"(C) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

It is also provided that:

"Notwithstanding the provisions of subparagraphs (A) through (D), an individual shall also be considered to be disabled for purposes of this subchapter if

he is permanently and totally disabled as defined under a State plan approved under subchapter XIV or XVI of this subchapter as in effect for October, 1972 and received aid under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), so long as he is continuously disabled as so defined." 42 U.S.C. § 1382c(3)(E).

Pursuant to the authorization contained in 42 U.S.C. § 1382c(3)(D) the Secretary has promulgated certain regulations for the implementation of the Supplemental Security Income Program.[1]

■ While these statutory provisions have been regarded as "very harsh", nevertheless they must be followed by the courts. *NLRB v. Staiman Brothers*, 466 F.2d 564 (3d Cir. 1972); *Choratch v. Finch*, 438 F.2d 342 (3d Cir. 1971); *Woods v. Finch*, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Secretary that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed by the Secretary.

The plaintiff was hospitalized at Greenville Hospital from April 25, 1971 through May 5, 1971 for spondylolesthesis, grade 1 (R. 140–143). A spinal fusion of L–5 and S–1 was performed at that time, and a good recovery made.

The plaintiff was hospitalized at Greenville Hospital from July 10, 1977 through July 17, 1977 for a chronic cervical sprain (R. 105–110, 144–145). At that time a paracervical block was performed and he improved and was discharged.

The plaintiff was hospitalized in Greenville Hospital from August 20, 1977 through August 29, 1977 for severe degeneration of the C 6 disc. An anterior cervical disc fusion and excision of C 5 and C 6 were performed (R. 111–117, 131–139, 146–149, 152).

The plaintiff was treated in the Greenville Hospital Emergency Room on August 31, 1977 and September 16, 1977 (R. 150, 163–164).

In a statement covering the period from May 4, 1965 through February 15, 1978, Dr. Robert H. Baker diagnosed spondylolesthesis L5, S1, noted limitations on cervical movement and the presence of paravertebral muscle spasm and radicular syndrome. Full weight bearing was achieved (R. 9). Dr. Baker specializes in orthopedic surgery (R. 165).

In a report of an examination conducted on April 3, 1978 (R. 118–121), Dr. Theodore R. Moran indicated that motion was limited in all spheres with flexion to 30 degrees, extension to 10 degrees, rotation to 40 degrees and lateral bending to 40 degrees. The doctor concluded:

"It is felt that this man is status post fusion with degenerative disc disease at the C5–C6 level with concomitant spondylosis at this level bilaterally. It is felt that he probably will never be able to do any heavy labor such as required by his work at Whittaker Metals." (R. 118).

The doctor also noted that the plaintiff could sit, stand or walk for eight hours as well as frequently lift up to ten pounds and occasionally lift up to twenty pounds.

After reviewing the medical evidence and in a report dated April 28, 1978, the disability reviewing physician stated:

"The claimant has degenerative disc disease and spondylosis of the cervical spine. The claimant underwent a spinal fusion. Prior to surgery the claimant had a full range of motion of his neck with no sensory, motor or reflex abnormalities; and, thus, he would have had the functional capacity to engage in light work. After surgery, the claimant has some limitation of motion with no radicular involvement. He would retain the functional capacity to do light work . ." (R. 73–74, 171).

This determination was reaffirmed on June 5, 1978 (R. 76).

1. See: 20 C.F.R. Part 416.

In a statement dated June 7, 1978 (R. 161), Dr. Robert H. Baker reported:

"The [plaintiff] is currently under my care for degeneration of C–6 disc—post fusion. At the present time he is unable to work."

In a report of examinations conducted in July and September 1978, Dr. Richard J. Peters stated:

"It would appear that this patient has a chronic hypertrophic gastritis and the present medication should reduce his hyperacidity and improve his symptomatology. He has had a weight gain of approximately 5½ pounds since first seen in June and is apparently eating well. There has been no evidence of upper G.I. bleeding." (R. 159).

Dr. Peters specializes in internal medicine (R. 166).

In a statement dated September 7, 1978, Dr. Richard L. Robbins diagnosed osteoarthritis and rheumatoid arthritis of the spine but declined to evaluate the degree of disability, if any (R. 160).

At various times the plaintiff received paracervical pain medication (R. 153–158).

The plaintiff was treated as an emergency out-patient at Greenville Hospital on April 8, 1979 for lower back pain and left leg weakness (R. 8). Para-spinal medication was administered and the use of Tylenol was advised.

■ The resolution of conflicting medical evidence and the determination of credibility rests with the Secretary. *Gober v. Mathews*, 574 F.2d 772 (3d Cir. 1978). In a similar manner an award of benefits by another agency is not binding on the Secretary. *Fowler v. Califano*, 596 F.2d 600 (3d Cir. 1979).

At the hearing held on October 4, 1978, Dr. Samuel Santoro was called upon to testify as a vocational expert (R. 55–67).[2]

The witness was first asked to assume,

"That Mr. Vanderslice is just as handicapped from working as the testimony here this morning would indicate. With that general finding do you have an opinion as to whether or not there are jobs in the economy which he could perform and if your answer is yes, and you agree that there are, would you please give us some representative examples and tell us something about their incidence in the economy?" (R. 56)

Based on the plaintiff's testimony, the witness concluded that he would be unable to engage in any substantial gainful activity on a continuing basis (R. 57).

The witness was next asked to assume,

". . . I would find in this case as follows: That we're dealing here with a 35-year old man who is 5'5" tall and weighs 145 pounds. He is a high school graduate and other than 3 months of training in the medical corps in the service, that was the end of his education. His work has consisted of being a maintenance man in the steel industry, repairing, welding, fabricating and generally maintaining all types of machinery and equipment.

"He has also worked for an automobile agency getting cars ready for resale. And has been a bartender for a few months, November 1977 to January 1978.

"I want you to assume further that I would find that in 1971 he had a lumbosacral fusion by Dr. Baker which the medical evidence indicates was quite successful and has given him no difficulty since. I also want you to assume that I would find that he was diagnosed as having a chronic cervical sprain and was hospitalized in July of 1977. In August of 1977 he was readmitted and with the diagnosis of questionable herniation at that time.

"He had a fusion and is presently in a post-operative status from the fusion with disc degeneration at the C–5 and C–6 levels with concomitance (phonetic) on the losis (phonetic) at this level bilaterally. There is also limitation of motion in the neck.

---

2. Dr. Santoro's qualifications as a vocational expert appear at R. 125–130.

"I also want you to assume that I find that he has a chronic hypertrophic gastritis which his doctor said that the present medication that he's on should improve his symptomatology.

"I want you also to assume that I would find that because of his conditions he could not do what we would term heavy or even moderately heavy work.

"Now with those findings does that change your opinion in any way?" (R. 57–58)

To this inquiry the witness responded affirmatively (R. 58), and indicated that the petitioner would be able to perform a broad spectrum of light and/or sedentary occupations such as self-service gasoline station attendant, brake bender, drum turner, parts man, auto parts salesman, stockboy, hospital guide, tray person and central supply worker which positions were considered illustrative and not exhaustive and were said to exist in considerable numbers in the economy (R. 58–60).

However, if severe residual leg pain existed the plaintiff would not be employable (R. 61). The existence of gastritis or the involvement of the plaintiff's arms and cervical spine would likewise prevent him from engaging in substantial gainful employment (R. 61–62).

The witness was next asked,

"taking my previous hypothetical and excluding the absence . . . of leg involvement, at least with respect to the numbness, but including the unimproved gastritis and the . . . cervical operation, the involvement which I just described regarding the arms and hands and shoulders, what would your answer be with respect to the availability of work?" (R. 66)

To this inquiry the witness responded that the plaintiff would be unable to engage in substantial gainful employ (R. 66).

In addition to reviewing the medical record, the Secretary must consider subjective symptoms. *Baerga v. Richardson*, 500 F.2d 309 (3d Cir. 1974). As the court stated in *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971):

"Symptoms which are real to the claimant although unaccompanied by objective medical data may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof."

In *Good v. Weinberger*, 389 F.Supp. 350, 353 (W.D.Pa.1975), the Court stated:

". . . *Bittel* seeks to help those claimants with cases that so often fall within the spirit—but not the letter—of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question."

After reviewing the entire record, the Secretary concluded:

"The medical evidence in the record reveals that the claimant had a lumbosacral fusion in 1971 from which he has recovered well. He was hospitalized in July, 1977 for conservative treatment of chronic cervical sprain. He improved following treatment and was discharged in good condition. The claimant was re-admitted on August 20, 1977 and diagnosed as having degeneration of the disc at C–6. He underwent a cervical fusion with excision of the disc at C5–C6. He was discharged in an improved condition and advised to resume some activities. On April 3, 1978 the claimant had an orthopedic examination. The claimant stated that he had no residuals from his 1971 surgery. However, he stated that any labor made his neck hurt. The pain was not radicular but was described as discomfort in his neck and across his shoulders with some weakness in the arms. Physical examination revealed mild tenderness over the cervical spine. There was a slight limitation of neck rotation and a moderate limitation of neck extension. No neurologic defects were elicited. X-rays showed post operative changes at C5–C6 where there were degenerative changes and foraminal narrowing. Diagnosis was status post fusion with degenerative disc disease at C5–C6 with concomitant spondylosis at this level. The

physician felt that the claimant could not perform heavy work but could sit, stand or walk for eight hours per day, use both hands and feet for repetitive motions and lift up to ten pounds frequently.

"The claimant was followed as an outpatient at Greenville Hospital. Immediately following his fusion, the claimant complained of severe pain. He was given medication and injections. However, outpatient records reveal that by April, 1978, the pain was intermittent in nature and he was given an anti-inflammatory with analgesic properties to take only as needed. In April, 1978 the claimant also sustained a minor impact injury to his left wrist for which pain medication was prescribed.

"Dr. Baker, the claimant's surgeon, reported on June 7, 1978 that the claimant was under his care for degeneration of the C–6 disc—post fusion and that the claimant was unable to work. However, the physician did not state what the claimant's functional limitations were, if any.

"On September 7, 1978, Dr. Richard Robbins reported that he had been giving chiropractic treatments to the claimant periodically since 1970. The diagnosis was osteoarthritis and rheumatoid arthritis of the spine. He did not give an opinion concerning the claimant's functional capacity.

"On October 3, 1978, Dr. Peters, a board certified internist, reported that he had examined the claimant on two occasions—July 9 and September 8, 1978—with complaints of heartburn and nausea. An upper G.I. Series revealed findings which suggested that the claimant was suffering from hypertrophic gastritis. He was treated conservatively and on his return visit his symptoms had improved. The claimant was continued on medication for relief of hyperacidity. Further improvement was expected in his symptomatology and it was noted that the claimant had a five and one-half pound weight gain from June to September, 1978.

"The evidence in the file shows that the claimant earned wages from the James-way Corporation in October, November and December, 1977 and in January, 1978, earnings over $200.00 per month. The claimant testified that he worked as a bartender for a few weeks in 1977 but stated that it bothered his back.

"In February, 1978 the claimant reported in his disability report that he cooked, cleaned and did the dishes every day and that he did the laundry weekly. He stated that he fished and bowled, and that he visited with relatives once or twice a week and that he was a club president with duties that took about fifteen to twenty hours per week to complete. He stated that he drove a car for short trips when necessary. At the hearing the claimant testified that he helps to clean the house and do the laundry and that he runs the vacuum cleaner. He stated that he drove the car for short trips several times a week.

"The claimant testified to several symptoms which are not apparent in the reports of his treating or examining physicians. He stated that he was frequently dizzy and that he has intermittent pain and numbness in his neck, shoulders, chest and arms and loss of grip strength in his hands. These symptoms were not apparent to the Administrative Law Judge during the hearing. The claimant entered and left the hearing room without observable distress and sat through the entire hearing without apparent discomfort. He testified that he is able to do housework and drive a car when necessary. He does not take strong pain medication. The Administrative Law Judge does not find his complaints of constant dizziness or disabling pain to be credible.

"A vocational expert also appeared at the hearing. When asked by the Administrative Law Judge to assume that the claimant was just as disabled from working as his testimony would indicate, he testified that, in his opinion, there were no jobs which the claimant could perform. When asked by the Administrative Law Judge to assume the medical evidence and facts in the record as summarized by

the Administrative Law Judge, the vocational expert testified that, in his opinion, the claimant could perform a variety of light and sedentary jobs. A representative though not exhaustive example of such jobs are self-service gas station attendant, brake binder, drum turner, parts man at an auto dealership, auto parts salesman, central medical supply worker, hospital guide, tray person in a hospital, office cleaner, building maintenance man, and office porter. The vocational expert testified that these jobs exist in substantial numbers in the national economy as well as in the Western Pennsylvania area, and locally where the claimant resides.

"The Administrative Law Judge agrees with the vocational expert and so finds. The claimant has status post cervical fusion with minimal residuals. He also has mild gastritis. There is no indication that the claimant has any residual limitations as a result of his 1971 lumbosacral fusion. In summary, the claimant has failed to establish that he was disabled within the meaning of the Act at any time on or before the date of this decision." (R. 25–27).

As was his prerogative, the Administrative Law Judge assigned to the evidence such weight as he believed proper.

Summary judgment is appropriate only when there are no disputed material issues of fact. *Major's Furniture Mart, Inc. v. Castle Credit Corp.*, 602 F.2d 538 (3d Cir. 1979). *Friedman v. Thorofare*, 587 F.2d 127 (3d Cir. 1978).

Accordingly, because there do not exist any material issues of fact, and because there exists substantial evidence to support the decision of the Secretary, it is respectfully recommended that the defendant's motion for summary judgment be granted and that the decision of the Secretary of Health, Education and Welfare be affirmed.

