**TITAN INDEMNITY COMPANY, a Texas corporation, Plaintiff–Appellant,**

v.

**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation, Defendant–Appellee.**

No. 06CA0040.

Colorado Court of Appeals, Div. I.

July 26, 2007.

Certiorari Denied April 21, 2008.

Zupkus & Angell, P.C., Robert A. Zupkus, Melissa Clack, Denver, Colorado, for Plaintiff–Appellant.

Montgomery, Kolodny, Amatuzio & Dusbabek, LLP, Kevin F. Amatuzio, John R. Chase, Max K. Jones, Jr., Denver, Colorado, for Defendant–Appellee.

Opinion by Judge MÁRQUEZ.

Plaintiff, Titan Indemnity Company, appeals the trial court's judgment granting the motion to dismiss filed by defendant, Travelers Property Casualty Company of America. The principal issue here is interpretation of the professional services exclusion in the commercial general liability policy Travelers issued to a company that processed medical bills for Titan's insureds. We affirm.

Titan and CorVel Corporation, a nonparty in this case, entered into a contract under which CorVel was to provide disability and medical cost management services and process and review all medical bills relating to Titan and its policyholders. The relevant parts of the contract between CorVel and Titan stated:

### CORVEL CORPORATION

1.1  CorVel Corporation is a full-service provider of Disability and Medical Cost Management Services to the insurance industry. CorVel Corporation has contracted with numerous healthcare and ancillary service providers ... who in turn have agreed to provide services at prospectively specified rates to CorVel Corporation and Titan policyholders.

. . . .

### COLORADO PPO MANAGED CARE SERVICES

3.3  CorVel Corporation will implement and provide utilization review as deemed necessary .... The purpose of utilization review is to determine the medical appropriateness, relatedness, and reasonable need of the past, current, or intended treatment of ... the Policyholder.

. . . .

### EXCLUSIVE CONTRACT

6.1  Titan agrees that ... it shall not enter into a contract or contract with any other party covering the Colorado PIP/PPO service covered by this contract.

. . . .

### REPRESENTATION, WARRANTIES AND OBLIGATIONS

9.2  Titan obligates to CorVel Corporation as follows:

(a) Titan shall refer all provider bills to CorVel Corporation for review and/or processing.

. . . .

9.3  CorVel Corporation represents and warrants to Titan as follows:

. . . .

(d) CorVel Corporation shall maintain in force throughout the term of this Agreement, and including any renewal thereof, an insurance policy or policies with minimum limits of one million ($1,000,000) for protection against losses sustained by virtue of CorVel Corporation's performance of those services set forth in this Agreement. CorVel Corporation shall name Titan ... as an Additional Insured for General Liability coverage as respects this Agreement....

As part of the contract, CorVel made Titan an additional insured under its policy with Travelers. CorVel and Travelers had separately agreed that Travelers would provide CorVel commercial general liability (CGL) insurance.

Following an automobile accident, Titan's policyholder sued Titan, alleging Titan failed to pay treatment charges and obtain an independent medical examination (IME) or provide any other reasonable basis to deny his bills. The policyholder alleged he sustained injuries in the accident and sought treatment for the accident-related injuries.

When Titan sought coverage under CorVel's CGL policy and requested that Travelers defend and indemnify Titan in the policyholder's suit, Travelers denied the request. Titan then sued Travelers for breach of contract, and Travelers filed a motion to dismiss pursuant to C.R.C.P. 12(b)(5).

Travelers' motion to dismiss alleged coverage was not triggered because (1) the policyholder did not allege he sustained "bodily injury," (2) no "occurrence" took place, (3) the designated professional services exclusion precluded coverage, and (4) the expected or intended injury exclusion precluded coverage. The trial court rejected all but the professional services exclusion arguments and granted the motion to dismiss based on this exclusion.

In this appeal, Titan focuses on the professional services exclusion and does not challenge the trial court's ruling that questions of fact preclude dismissal for the bodily injury, occurrence, and expected or intended injury exclusion issues.

## I. Standard of Review

Motions to dismiss under C.R.C.P. 12(b)(5) are viewed with disfavor. We review a trial court's determination on a motion to dismiss de novo and, like the trial court, must accept all averments of material fact contained in the complaint as true. *Fluid Tech., Inc. v. CVJ Axles, Inc.*, 964 P.2d 614, 616 (Colo.App.1998). All the allegations in the complaint must be viewed in the light most favorable to the plaintiff. *Verrier v. Colo. Dep't of Corr.*, 77 P.3d 875, 877 (Colo.App. 2003).

In ruling on a motion to dismiss a complaint, the court may consider only matters stated in the complaint and must not go beyond the confines of the pleading. *Kratzer v. Colo. Intergovernmental Risk Share Agency*, 18 P.3d 766, 769 (Colo.App.2000); *Fluid Tech., Inc. v. CVJ Axles, Inc., supra*, 964 P.2d at 616.

We review the interpretation of an insurance policy de novo and construe it according to principles of contract interpretation. In interpreting a contract, we give effect to the intent and reasonable expectations of the parties. We must enforce the plain language of the policy unless it is ambiguous. An insurance policy is ambiguous if it is susceptible of more than one reasonable interpretation. *Hoang v. Assurance Co.*, 149 P.3d 798, 801 (Colo.2007). The determination whether a contract is ambiguous is a question of law. *Pub. Serv. Co. v. Meadow Island Ditch Co. No. 2*, 132 P.3d 333, 339 (Colo.2006).

## II. Professional Services Exclusion

Titan contends that the trial court erred, as a matter of law, when it granted Travelers' motion to dismiss on the basis that the Designated Professional Services Exclusion in the CGL policy between CorVel and Travelers precluded coverage to Titan in the underlying lawsuit. We are not persuaded.

### A.

As a preliminary matter, we reject Titan's contention that the trial court should have converted the motion to dismiss into a motion for summary judgment. Documents referred to in the complaint and central to a plaintiff's claim may be considered by a court on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment, notwithstanding that the documents are not formally incorporated by reference or attached to the complaint. *Yadon v. Lowry*, 126 P.3d 332, 336 (Colo.App.2005). Here, however, the motion to dismiss was not converted into a summary judgment because the underlying complaint was incorporated into Titan's pleadings and attached as Exhibit B.

### B.

We also conclude that the trial court did not err in granting Travelers' motion as a motion to dismiss.

CGL insurance protects businesses from third-party claims for personal injury or property damage resulting from accidents. A typical CGL policy broadly defines the damages to which it applies and then specifically lists exclusions to the broad grant of coverage. *Hoang v. Assurance Co., supra*, 149 P.3d at 802.

An insurance policy must be construed to meet the reasonable expectations of the insured, and exclusions must be clear and specific to be enforceable. *Hoang v. Assurance Co., supra*, 149 P.3d at 803.

Here, CorVel is a full-service provider of disability and medical cost management services to insurance companies and their policyholders. Its CGL policy with Travelers contained a designated professional services exclusion stating, "With respect to any professional services shown in the Schedule, this insurance does not apply to 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury' due to the rendering or failure to render any professional services."

The CGL policy defined "professional services" as "[t]he providing of or failure to provide managed care services, patient management services, or medical provider programs or services."

We conclude the insurance policy's exclusion of professional services is not ambiguous and therefore enforce its plain language. The policy excludes CGL coverage for specified injuries caused by CorVel's failure to render professional services. CorVel was in the business of helping insurance companies minimize costs of medical treatment by providing them with disability and medical cost management services. CorVel's failure to provide an IME and its denial of medical costs constitute the failure to provide "managed care services, patient management services, or medical provider programs or services" within the meaning of "professional services" as defined in its policy with Travelers.

Titan asserts that the appropriate analysis is not whether CorVel's actions constitute professional services, but whether Titan's actions constitute professional services. Titan asserts that because it is an additional insured, it may seek a defense and indemnification in its own right independent of CorVel. We conclude Titan's rights are governed by its contract with CorVel.

The contract between CorVel and Titan is not ambiguous. First, it provided that CorVel would implement and provide utilization review as deemed necessary and that Titan could not contract with any other preferred provider organization or a party covering personal injury protection claims in Colorado. Thus, CorVel, not Titan, was to process the policyholder's claims and requests.

Second, the contract between CorVel and Titan limited coverage to Titan as an additional insured "for protection against losses sustained by virtue of CorVel Corporation's performance of those services" set forth in the agreement.

Because CorVel's denial of the policyholder's claims and IME request was a failure to provide professional services as defined in the CGL policy and because the language of the contract between Titan and CorVel limit-

ed coverage to losses resulting from CorVel's performance, we conclude the professional services exclusion applied. Consequently, we need not address Titan's contention that Travelers is obligated to defend and indemnify it where the claims against Titan potentially trigger coverage.

### C.

■ We reject Titan's contention that scheduling an IME is an administrative task, which falls outside the scope of the Designated Professional Services Exclusion.

Titan relies on *Guaranty National Insurance Co. v. North River Insurance Co.*, 909 F.2d 133, 135 (5th Cir.1990), and *Noyes Supervision, Inc. v. Canadian Indemnity Co.*, 487 F.Supp. 433 (D.Colo.1980). However, both cases are distinguishable because the policies at issue there did not define "professional services."

In *Guaranty National*, the court held that the hospital's decision to protect patients by installing screws to secure window sashes rather than fixed, protective screens over the windows was an administrative business decision, not a professional medical decision. Thus, the policy's exclusion of coverage for claims due to "failure to render ... any service or treatment conducive to health or of a professional judgment," did not apply. The court interpreted the words "professional judgment" to include a professional medical judgment. It relied in part on cases addressing "professional training" and "professional services" exclusions.

In *Noyes Supervision*, a case involving damage to a gas well, the insurance policy at issue did not define "professional services." The court there reviewed the definitions used in other contexts to include acts "applying specialized knowledge and intellectual skills" to the performance of duties, *Horn v. Burns & Roe*, 536 F.2d 251, 255 (8th Cir.1976); "work requiring knowledge of an advanced type in a field of learning or science," *Gulf Ins. Co. v. Gold Cross Ambulance Serv. Co.*, 327 F.Supp. 149, 152 (W.D.Okla.1971); and an act "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, [if] the labor

or skill involved is predominantly mental or intellectual, rather than physical or manual," *Marx v. Hartford Accident & Indem. Co.,* 183 Neb. 12, 157 N.W.2d 870, 871–72 (1968). *Noyes Supervision, Inc.,* supra, 487 F.Supp. at 437–38. Based on that review, the *Noyes* court held that the completion foreman's failure to follow orders was not related to a professional service, and the exclusion did not apply.

Titan also relies on *Jefferson Insurance Co. v. National Union Fire Insurance Co.,* 42 Mass.App.Ct. 94, 677 N.E.2d 225, 227 (1997). There, the court held that an ambulance's delay in responding to a medical emergency was not a "failure to render ... medical ... or nursing services [or] any service or treatment ... of a professional nature." "Professional services" was not defined in the policy, and the court concluded the term was ambiguous. After reviewing definitions in other cases, the court concluded that the conduct complained of was in the nature of nonspecialized clerical or administrative activity requiring neither special learning, intellectual skill, nor professional judgment.

Here, the term "professional services" is defined in the policy, and that definition and the policy as a whole guide our resolution. We conclude CorVel's failure to provide an IME and cover medical costs for Titan's policyholder constitutes a failure to provide professional services as defined in the policy. Thus, the trial court properly concluded that the professional services exclusion in the CGL policy barred Titan's claim.

### D.

Because Travelers' obligation to provide coverage is defined by its policy, and we conclude that Travelers did not have a duty to provide coverage to Titan in this case, we reject Titan's contention that the trial court's decision to allow Travelers to deny coverage to Titan violates public policy and basic fairness. Contrary to Titan's assertion, there is no evidence that Travelers or the court rewrote the terms of the policy.

### III. Motion to Reconsider

We also disagree with Titan's contention that the trial court erred in denying its motion for leave to file a motion for reconsideration and in rejecting Titan's arguments to clarify the trial court's original order.

An order or judgment must be reduced to writing, dated, and signed before it is final. *People in Interest of O.J.S.,* 844 P.2d 1230, 1233 (Colo.App.1992), *aff'd sub nom. D.A.S. v. People,* 863 P.2d 291 (Colo. 1993).

Within fifteen days of entry of judgment or such greater time as the court may allow, a party may move for posttrial relief under C.R.C.P. 59(a). Failure to file the motion within the time allowed by C.R.C.P. 59(a), or within the time allowed by the court in response to a timely filed motion for extension of time, deprives the court of jurisdiction to act under C.R.C.P. 59. *In re Marriage of McSoud,* 131 P.3d 1208, 1212 (Colo. App.2006).

Here, the trial court entered a written order dated November 22, 2005 granting Travelers' motion to dismiss. Titan filed its motion for leave to file a motion for reconsideration on December 29, 2005, but the trial court denied it without explanation. However, the time to file the motion for post-trial relief ended December 7, 2005. Thus, Titan's motion for leave was untimely, and the trial court did not err in denying it.

Judgment affirmed.

Judge ROY and Judge FURMAN concur.