**Joseph RICE, Petitioner–Appellant,**

**v.**

**Robert HOKE, Warden, Eastern Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondents–Appellees.**

**No. 492, Docket 87–2281.**

United States Court of Appeals, Second Circuit.

Argued Dec. 11, 1987.

Decided May 10, 1988.

Judith L. Holmes, New York City, for petitioner-appellant.

Morrie I. Kleinbart, Asst. Dist. Atty. (Robert M. Morgenthau, Dist. Atty., New York County, Marc Frazier Scholl, Asst. Dist. Atty., New York City, of counsel), for respondents-appellees.

Before LUMBARD, OAKES and PRATT, Circuit Judges.

OAKES, Circuit Judge:

Joseph Rice appeals from a judgment of the United States District Court for the Southern District of New York, Whitman Knapp, Judge, dismissing his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982). Rice sought to have set aside a 1980 judgment of the Supreme Court, New York County, James Leff, Judge, convicting him of murder in the second degree, N.Y.Penal Law § 125.25 (McKinney 1987), and assault in the first degree, N.Y.Penal Law § 120.10 (McKinney 1987). He claimed that the trial court erred by failing to instruct the jury on the lesser included offenses of manslaughter in the first degree and manslaughter in the second degree. Judge Knapp concluded that no reasonable view of the evidence adduced at trial supported instructions on the lesser included offenses. We agree and affirm the dismissal of the petition.

## BACKGROUND

In November of 1979, Joseph Rice lived with Kim Morris in his mother's apartment at One Arden Street in Upper Manhattan. Rice was eighteen years old and Morris nineteen. On the morning of November 27, 1979, Rice and Morris had an argument and exchanged blows. Rice left the apartment, followed soon after by Morris. She was wearing only her bathrobe, and her leg was bleeding.

Rice and Morris walked north on Nagle Avenue. Gregory Santiago, Juan Acosta, and Eugene DiSalvo were standing in front of a store on Nagle Avenue between Thayer and Dyckman Streets, approximately one block from Rice's apartment. They noticed Morris's unusual appearance and started laughing and talking loudly. When one of them called Morris a "bitch," Rice approached them and said, "I know you ain't calling my wife a bitch. What the f____ are you looking at?" Rice and DiSalvo argued and exchanged harmless punches. Neither man had a weapon. Rice then said, "I will be back," and ran toward his apartment building. Morris followed and was climbing the interior stairway to the apartment as Rice was descending. He ordered her to go "straight up" to the apartment and that he would see her later.

A few minutes later, Rice returned to Nagle Avenue. DiSalvo and Santiago had crossed the street and were now standing in front of a candy store. Rice said, "There is going to be no more fist fighting." He removed a gun from his pocket and, standing fifteen to twenty feet away from DiSalvo, fired five shots, striking DiSalvo three times, twice in the arms and once in the back of the head. Rice then ran down Nagle Avenue toward his apartment building. Acosta, who had picked up a three-foot long aluminum pipe he kept hidden near the candy store, and Santiago ran after Rice. Rice ran into his apartment building but before he could remove his key and shut the inner vestibule door, Acosta had forced his way into the lobby. Acosta hit Rice with the pipe. When Acosta tried to hit him a second time, Rice shot him at close range. The bullet passed through Acosta's neck and lodged in his shoulder. Rice tried to fire the gun two more times, but the ammunition had been exhausted so the gun simply clicked twice. Rice then disappeared inside the building. Santiago removed the keys from the vestibule door lock and gave them to a police officer who had arrived to investigate the shooting. DiSalvo died later that day of his wounds. Acosta recovered. The next day, Rice surrendered to the police. At a line-up held that afternoon, Santiago identified Rice as the man who had shot DiSalvo and Acosta.

Rice was tried before a jury in New York Supreme Court on charges of murder in the second degree, attempted murder in the second degree, assault in the second degree, and criminal possession of a weapon in the second and third degrees. Santiago and Acosta testified that Rice was the man who had exchanged words and blows with DiSalvo just prior to the shooting, and who then five minutes later returned and shot DiSalvo and Acosta. Defense counsel vig-

orously cross-examined Acosta about his ability to identify the perpetrator. Kim Morris likewise testified that Rice was the person who had fought with DiSalvo. She also stated that Rice was protective of her.

Police Officer John V. Tobin, who was one of the first police officers to come to Nagle Avenue after the shooting, described DiSalvo's condition when he found him on the floor of the candy store. Detective Martin J. Joseph described the three bullet shells he found in the wall of the candy store, and also testified that two of the keys from the set which Santiago had removed from the vestibule door opened the top and bottom of the door to Rice's apartment. The set of four keys was not introduced into evidence. Detective Joseph and other police officers explained that the keys were incorrectly classified as investigatory evidence and, pursuant to property clerk procedures, were destroyed. Defense counsel extensively cross-examined Detective Joseph, focusing in particular on his response to a telephone caller who claimed that the black male who had committed the shooting was in the apartment building at One Arden Street. Joseph testified that he went to the building and encountered a black male who Joseph soon determined was not the perpetrator. Dr. Solaman Rivera testified that when Acosta arrived at Jewish Memorial Hospital shortly after the shooting, he was in shock, bleeding profusely from a neck wound, and very lethargic. Dr. Beverly Leffers, an associate medical examiner for the City of New York, testified that DiSalvo had one gunshot wound in the back of his head and two in his right arm and testified that the head wound proved fatal. Rice did not testify, and the defense did not call any other witnesses.

At the completion of the evidence, the trial judge told counsel that with respect to the Acosta shooting and in particular with respect to count two—attempt to commit murder in the second degree—he intended to instruct the jury on the lesser included offense of assault in the first degree. Neither side requested additional instructions. Defense counsel's summation focused on the issue of identification. He suggested that Gregory Santiago's alcoholism and Juan Acosta's drinking greatly impaired their ability to identify the man responsible for the shooting. He added that the prosecutor had never asked Acosta to participate in a line-up identification. In response, the prosecutor reviewed the evidence linking Rice to the shooting, including the testimony of Morris, Santiago, and Acosta that Rice was the person who had exchanged verbal and physical blows with DiSalvo just prior to the shooting and the testimony of Santiago and Acosta that Rice was the man who shot DiSalvo and Acosta. The prosecutor added:

I suggest to you that under those circumstances the only reasonable conclusion is that the person who shot DiSalvo was the defendant.

[He] obviously had a motive to kill him. He was angry. An impulsive type person. He had two fights in the previous ten or fifteen minutes. This time it was with a gun.

After the State had completed its summation, and after a brief recess, the defense counsel requested that the trial judge instruct the jury on the lesser included offense of manslaughter in the first degree and manslaughter in the second degree. Observing that the district attorney had stated in his summation that the defendant was angry and impulsive, defense counsel claimed the evidence supported a conclusion that the defendant acted in the "[h]eat of passion." The prosecutor objected, contending that a request for jury instructions must be made before summations and that to grant such a request at this point would be prejudicial. The court refused to give the requested instructions, stating:

In my view, this case should not be submitted under the theory of manslaughter in the first degree. No reasonable view of the evidence that was adduced here made the Jury infer that the elements of manslaughter in the first degree were present.

The application to submit manslaughter in the first degree, that under no theory of the case can the Jury consider

on the state of the record, any extreme emotion or disturbance.

. . . .

I am not going to submit manslaughter in the second degree. There is no theory on which that—

The judge then charged the jury on murder in the second degree as to the DiSalvo shooting and attempted murder in the second degree, assault in the first degree, and assault in the second degree as to the Acosta shooting, and criminal possession of a weapon in the second and third degrees. Rice was convicted of murder in the second degree, assault in the first degree, and criminal possession of a weapon in the second degree. The trial judge sentenced Rice to concurrent terms of twenty-five years to life imprisonment on the murder count and five to fifteen years on the assault count. He dismissed the weapons possession count as a lesser included offense.

Rice appealed to the New York Appellate Division, First Department, claiming (1) that the court violated his right to confront the witnesses against him when it curtailed his cross-examination of two prosecution witnesses; (2) that the court should have charged the jury on manslaughter in the first degree, on the theory that he acted with extreme emotional distress or with intent to cause serious physical injury, and on manslaughter in the second degree; and (3) that the sentence was excessive. In response, the People contended that the jury charge claim was not preserved for appellate review and that it and the other claims were without merit. On December 8, 1981, the Appellate Division reduced the sentence on the murder count to fifteen years to life, but affirmed without comment the judgment in all other respects. *People v. Rice*, 85 A.D.2d 528, 444 N.Y.S.2d 657 (App.Div.1981). Rice's application for leave to appeal was denied, 55 N.Y.2d 883, 433 N.E.2d 543, 448 N.Y.S.2d 1032 (1982) (Cooke, C.J.), as was his application for reconsideration of the denial of leave to appeal, 56 N.Y.2d 599, 435 N.E.2d 1107, 450 N.Y.S.2d 1034 (1982) (Cooke, C.J.).

Rice filed a petition for a writ of habeas corpus on January 30, 1987, in the United States District Court for the Southern District of New York, arguing that he had been denied a fair trial because the state court did not instruct the jury on the lesser included offenses of manslaughter in the first degree and manslaughter in the second degree. Respondent argued that the claim was procedurally barred and lacked merit. Judge Knapp dismissed the petition, finding that no reasonable view of the evidence adduced at trial supported the requested instruction. Judge Knapp did not reach the merits of whether Rice's claim presented a constitutional issue. He concluded that "even assuming that such a due process right does exist and is cognizable in a federal court," the petitioner was not deprived of any constitutional right. Judge Knapp granted Rice's motion for reargument, incorporated all of his " 'corrections' of factual errors in our prior ruling," and on reconsideration adhered to his original conclusions. He then granted petitioner's application for a certificate of probable cause, and this appeal ensued.

## DISCUSSION

As a preliminary matter, the State argues that Rice's failure to request jury instructions before summation violated New York's procedural rules, thereby precluding habeas review absent a showing of cause for the default and prejudice resulting therefrom. *See Engle v. Isaac*, 456 U.S. 107, 110, 102 S.Ct. 1558, 1562, 71 L.Ed. 2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87–88, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977). It is true that where the State argues procedural waiver to the New York Appellate Division, and that court then affirms without opinion, this court must presume that the decision rested on procedural grounds. *Rodriguez v. Scully*, 788 F.2d 62, 63 (2d Cir.1986); *Martinez v. Harris*, 675 F.2d 51, 54–55 (2d Cir.), *cert. denied*, 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982). However, this court may reach the merits where a defendant raises a claim which the New York Appellate Division would have reviewed despite the procedural error. *See Hawkins v. LeFevre*, 758 F.2d 866, 871–73 (2d Cir. 1985); *Rodriguez*, 788 F.2d at 65–66 (New-

man, J., concurring) (citing *People v. Thomas,* 50 N.Y.2d 467, 471, 407 N.E.2d 430, 432, 429 N.Y.S.2d 584, 586 (1980) (burden of proving intent); *People v. Patterson,* 39 N.Y.2d 288, 296, 347 N.E.2d 898, 903, 383 N.Y.S.2d 573, 578 (1976), *aff'd sub nom. Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (burden of persuasion on affirmative defenses); *People v. McLucas,* 15 N.Y.2d 167, 172, 204 N.E.2d 846, 848, 256 N.Y.S.2d 799, 802 (1965) (right against self-incrimination)).

■ As New York courts do not review untimely requests for jury instructions on lesser included offenses, *see, e.g., People v. Ford,* 62 N.Y.2d 275, 465 N.E.2d 322, 476 N.Y.S.2d 783 (1984) (per curiam), this court can review Rice's requests for additional jury instructions only if they were made in a timely fashion. New York Criminal Procedure Law section 300.10 specifies that "[b]oth before *and after the court's charge,* the parties may submit requests to charge...." (Emphasis added.) The New York Court of Appeals has stated that a request for jury instructions is timely if made before the jury begins its deliberations. *See People v. Duncan,* 46 N.Y.2d 74, 80, 385 N.E.2d 572, 576, 412 N.Y.S.2d 833, 837 (1978) ("all requests to submit lesser included offenses, as a general rule, should be made prior to submission to the jury"), *cert. denied,* 442 U.S. 910, 99 S.Ct. 2823, 61 L.Ed.2d 275 (1979); *People v. Hanley,* 87 A.D.2d 850, 851, 449 N.Y.S.2d 247, 248 (1982). Rice requested jury instructions on manslaughter in the first degree on the theory of extreme emotional distress and on manslaughter in the second degree before the judge charged the jury and before the jury began its deliberations. Since the New York Court of Appeals would consider this request timely and therefore reach the merits, we need not presume that the Appellate Division's silent affirmance rested on procedural grounds. In contrast, Rice requested a charge on manslaughter in the first degree on the theory of intent to cause serious physical injury for the first time on direct appeal. Because this request was not timely, habeas review of a claim based on this theory of manslaughter is precluded.

Rice argues that the trial court's refusal to instruct on the lesser included offenses deprived him of due process. The State, on the other hand, argues that Rice's petition is not subject to habeas review because it states neither a federal claim nor a perceived error of state law amounting to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment. *See Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984). Although the Supreme Court has determined that in capital cases a judge must charge the jury on lesser included noncapital offenses where the evidence warrants such a charge, *see Beck v. Alabama,* 447 U.S. 625, 627, 100 S.Ct. 2382, 2384, 65 L.Ed.2d 392 (1980), it has expressly reserved the question whether due process requires a lesser included offense instruction in a noncapital case. *Id.* at 638 n. 14, 100 S.Ct. at 2390 n. 14. This circuit has not yet ruled on this issue. *See, e.g., Harris v. Scully,* 779 F.2d 875, 880 (2d Cir. 1985) (evidence did not warrant instruction on lesser included offense); *Casillas v. Scully,* 769 F.2d 60, 63 (2d Cir.1985) (defendant requested instruction on crime that was not lesser included offense of crime charged); *cf. United States ex rel. Smith v. Montanye,* 505 F.2d 1355, 1359 (2d Cir. 1974) (jury charge in state trial not normally reviewable on federal habeas corpus absent showing that alleged errors deprived defendant of constitutional right), *cert. denied,* 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 81 (1975). The circuit courts that have considered the issue are divided. The Fifth, Eighth, and Ninth Circuits hold that failure to instruct on a lesser offense does not present a federal constitutional question and therefore will not be considered in a federal habeas proceeding. *Cooper v. Campbell,* 597 F.2d 628, 631 (8th Cir.), *cert. denied,* 444 U.S. 852, 100 S.Ct. 106, 62 L.Ed.2d 69 (1979); *James v. Reese,* 546 F.2d 325, 327 (9th Cir.1976); *Bonner v. Henderson,* 517 F.2d 135, 136 (5th Cir.1975) (per curiam). On the other hand, the Third, Sixth, and Seventh Circuits hold that federal courts have jurisdiction to review the refusal to instruct on lesser included of-

fenses if the refusal deprived the defendant of due process. *Bishop v. Mazurkiewicz*, 634 F.2d 724, 725 (3d Cir.1980), *cert. denied*, 452 U.S. 917, 101 S.Ct. 3053, 69 L.Ed.2d 421 (1981); *Brewer v. Overberg*, 624 F.2d 51, 52 (6th Cir.1980) (per curiam), *cert. denied*, 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1981); *Davis v. Greer*, 675 F.2d 141, 143–44 (7th Cir.), *cert. denied*, 459 U.S. 975, 103 S.Ct. 310, 74 L.Ed.2d 289 (1982).

Rice suggests three reasons for basing a constitutional claim on the refusal to give instructions on lesser included offenses. He contends that offering an alternative to acquittal or conviction on the greater charge reduces the risk of an unwarranted conviction, *see Beck*, 447 U.S. at 637, 100 S.Ct. at 2389; *Keeble v. United States*, 412 U.S. 205, 212–13, 93 S.Ct. 1993, 1997–98, 36 L.Ed.2d 844 (1973); that failure to give an instruction warranted by the evidence is an arbitrary and capricious deprivation of a state-created right; and that failure to give an instruction warranted by the evidence impermissibly shifts the factfinding function from the jury to the judge. *See Stevenson v. United States*, 162 U.S. 313, 321–23, 16 S.Ct. 839, 842–43, 40 L.Ed. 980 (1896). While we find some merit in Rice's contentions, particularly his first argument, we need not decide whether the failure to give an instruction on lesser included offenses in a noncapital case presents a constitutional claim, because in this case, the trial judge correctly ruled that the evidence did not warrant the requested instructions.

A trial judge must charge the jury on lesser included offenses when (1) it is theoretically impossible to commit the greater crime without committing the lesser and (2) a reasonable view of the evidence would permit the jury to find that the defendant had committed the lesser, but not the greater, offense. *Keeble*, 412 U.S. at 208, 93 S.Ct. at 1995; *People v. Glover*, 57 N.Y.2d 61, 63, 439 N.E.2d 376, 377, 453 N.Y.S.2d 660, 661 (1982) (per curiam); *People v. Green*, 56 N.Y.2d 427, 430, 437 N.E.2d 1146, 1147–48, 452 N.Y.S.2d 389, 391 (1982); N.Y.Crim.Proc.Law § 300.50(1) (McKinney 1982). Because it is not disputed that manslaughter in the first degree or manslaughter in the second degree satisfy the first part of the test, *Harris*, 779 F.2d at 880; *People v. Ford*, 66 N.Y.2d 428, at 440, 488 N.E.2d 458, at 463–64, 497 N.Y.S.2d at 643; *Green*, 56 N.Y.2d at 434, 437 N.E.2d at 1150, 452 N.Y.S.2d at 393, we turn to the second part.

█ A defendant can be convicted of manslaughter in the first degree if he establishes extreme emotional disturbance as an affirmative defense to murder in the second degree. N.Y.Penal Law §§ 125.-20(2), 125.25(1) (McKinney 1987).[1] The extreme emotional disturbance defense is available only to defendants whose actions were caused by a "mental trauma" or "mental infirmit[y] not arising [*sic*] to the level of insanity." *People v. Casassa*, 49

---

1. N.Y.Penal Law § 125.25(1) establishes extreme emotional disturbance as an affirmative defense to murder in the second degree.

A person is guilty of murder in the second degree when:

1. With intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution under this subdivision, it is an affirmative defense that:

(a) The defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be....

N.Y.Penal Law § 125.20(2) provides that a defendant charged with murder in the second degree who successfully offers an extreme emotional disturbance defense is guilty of manslaughter in the first degree.

A person is guilty of manslaughter in the first degree when:

With intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as defined in paragraph (a) of subdivision one of section 125.25. The fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subdivision....

N.Y.2d 668, 677, 404 N.E.2d 1310, 1314–15, 427 N.Y.S.2d 769, 774, *cert. denied*, 449 U.S. 842, 101 S.Ct. 122, 66 L.Ed.2d 50 (1980). There must be a subjective determination that the particular defendant acted under an extreme emotional disturbance and an objective determination that there was a reasonable explanation or excuse for that mental state. *Id.* at 678–79, 404 N.E. 2d at 1315–16, 427 N.Y.S.2d at 775. Here the proof showed only that Rice was angry because the three men had remarked at Morris's appearance. Anger alone, however, does not amount to a mental infirmity or the loss of self-control associated with the defense of extreme emotional disturbance. *See People v. Walker*, 64 N.Y.2d 741, 743, 475 N.E.2d 445, 446, 485 N.Y.S.2d 978, 979 (1984); *cf. People v. Moye*, 66 N.Y.2d 887, 890, 489 N.E.2d 736, 738, 498 N.Y.S.2d 767, 770 (1985).

Rice's second claim that the evidence warranted an instruction on manslaughter in the second degree is equally meritless. A person is guilty of manslaughter in the second degree when he "recklessly causes the death of another person." N.Y.Penal Law § 125.15(1) (McKinney 1987). Here the shooting was the result of a series of deliberate acts. After the altercation on the street, Rice told DiSalvo, his intended victim, "I will be back"; he then ran to his apartment building and retrieved a loaded gun, telling Morris to stay at the apartment. Rice then returned to Nagle Avenue, and located DiSalvo, who had crossed the street to the candy store. Stating that there would be no more fist fighting, Rice fired the gun five times at close range. It is impossible to construe these events as involving only reckless acts.

We agree with the district court that a jury, reasonably viewing the evidence at trial, could not have found that Rice had committed the lesser included offenses of manslaughter in the first degree or manslaughter in the second degree, and therefore affirm the dismissal of his petition.