Jose DELGADO, Petitioner

v.

Hans WALKER, Warden, Respondent.

No. 90 CV 4375 (SJ).

United States District Court, E.D. New York.

June 9, 1992.

Jose Delgado, pro se.

Charles J. Hynes, Dist. Atty. of Kings County, Brooklyn, N.Y. (Catherine Arcabascio, Asst. Dist. Atty., of counsel), for Walker.

## MEMORANDUM AND ORDER

JOHNSON, District Judge:

Petitioner Jose Delgado was convicted on August 21, 1985, after a jury trial in New York State Supreme Court, Kings County, of Murder in the Second Degree and Criminal Possession of a Weapon in the Second Degree. Delgado was sentenced to twenty-five years to life on the murder conviction and seven and one-half to fifteen years on the weapon charge. The New York Appellate Division, Second Department, unanimously affirmed the conviction on January 19, 1988 and modified the weapon possession sentence to five to fifteen years. 136 A.D.2d 651, 523 N.Y.S.2d 884. The New York Court of Appeals denied leave to appeal on March 17, 1988. On October 17, 1988, the New York Appellate Division, Second Department, denied petitioner's motion for a writ of error *coram nobis* and on March 14, 1990, the New York Supreme Court, Kings County, denied petitioner's motion to vacate the judgment. On August 2, 1990, the New York Appellate Division, Second Department, denied petitioner's request for leave to appeal that decision.

Thereafter, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner seeks habeas corpus relief on the grounds, *inter alia,* that he was deprived of his due process right to a fair trial (citing various facts in support of such motion), and that he was denied effective assistance of counsel at both the trial and appellate level. Each of these claims has been exhausted and, as such, this court addresses the merits of petitioner's claims. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

## BACKGROUND

### A. *The Incident and the Arrest.*

The evidence adduced at the trial of the defendant in New York State Supreme Court, Kings County established the following: On October 16, 1984, Jose Delgado was involved in a minor traffic accident with Raymond Garcia. The two men became involved in a fight. Shortly thereafter, Delgado left the scene, telling Garcia that he would return. Delgado returned to the scene with a .38 caliber revolver and shot Garcia twice in the head, and once in the back.

After interviewing eyewitnesses who identified Garcia as the perpetrator of the shooting, New York City Police Detective Gardella arrested petitioner at his home at approximately 2:00 a.m. on October 17, 1984. Gardella arrived at the defendant's home, identified himself and was granted entry by Delgado. At the time, Delgado was in his underwear; Gardella followed Delgado to the bedroom so that Delgado could get dressed.

Upon entry into the bedroom, Gardella saw and seized a revolver, the revolver that ballistics experts later established to have been used in the commission of the crime. Gardella then took petitioner to the 72nd Precinct where, after Delgado was advised of his *Miranda* rights, he made a confession.

### B. *The Trial.*

Immediately prior to trial, Delgado attempted to plead guilty to second-degree murder. In the course of allocuting, how-

ever, he claimed self-defense and, on this basis, the court trial, refused to accept the plea.

At trial, the Kings County Assistant District Attorney (hereinafter the "State") introduced the testimony of eyewitnesses including two individuals who were friends of Delgado, Detective Gardella, a medical examiner and a ballistics expert. Defense counsel cross-examined each person vigorously and conducted a voir dire with respect to certain evidence, as needed.

Not only did Delgado's trial counsel attempt to impeach the State's witnesses, but he also sought to establish the defendant's peaceful and truthful character by calling two witnesses. The defense sought to prove the affirmative defenses of justification and extreme emotional distress. Finally, the defense tried to challenge the validity of the post-arrest statement allegedly made by the defendant. Specifically, defense counsel argued that the alleged confession was fabricated by the State because, he averred, the defendant was not capable of making a confession in English as the New York Police officer testified.

To rebut the charge that the alleged confession had been fabricated by the police, the State sought to introduce a videotaped statement made by Delgado in which Delgado is seen and heard asking for a lawyer in English. After an *in camera* review of the tape, the trial court granted the State leave to introduce the statement finding that it did not violate the defendant's right against self-incrimination, right to counsel and due process right to a fair trial.[1]

Trial counsel sought a jury instruction as to extreme emotional disturbance. The court refused that request.

After deliberating and seeking several read-backs of testimony including that of an eyewitness, the jury found the defendant guilty of Second Degree murder and criminal possession of a weapon in the second-degree.

---

**1.** The court also refused to exclude the tape on the grounds that the State had not produced it

## DISCUSSION

### A. *Ineffective Assistance Of Trial Counsel.*

Petitioner claims that his trial counsel was ineffective. In support of his claim, petitioner cites trial counsel's failure to make a motion pursuant to *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). A *Payton* motion challenges a warrantless, nonconsensual entry into a suspect's home for the purpose of making an arrest as violative of the Fourth Amendment when such entry is not justified by probable cause or exigent circumstances.

■ The Supreme Court established the standards by which counsel's conduct is reviewed when a Sixth Amendment claim of ineffective assistance of trial counsel is raised. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, a defendant must show that counsel performed in a manner which was so deficient as to not be "within the realm of reasonable professional competence," *Tsirizotakis v. LeFevre*, 736 F.2d 57, 62–63 (2d Cir.), *cert. denied*, 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984) (citing *Strickland*). Second, petitioner must demonstrate that he was deprived of "a fair trial, a trial whose result is reliable," because of the errors of trial counsel. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064.

■ Standing alone, the act of forgoing a *Payton* motion was neither unreasonable nor did it render the verdict in this case unreliable. Defense counsel's actions did not illustrate a lack of sound professional judgment. From a tactical viewpoint, counsel probably determined that a *Payton* motion was unlikely to succeed given the exigent circumstances leading up to the arrest

---

in the course of normal discovery and refused to grant a mistrial as well. (TT 464–67).

of Delgado.[2] A violent murder had occurred, no weapon had been found at the scene of the crime which suggested that the alleged assailant remained armed, and eyewitnesses, including friends of Delgado's, had identified Delgado as the perpetrator. It was reasonable for a police detective to conclude that the suspect might seek to flee the jurisdiction given these factors.

Furthermore, there is no evidence that Detective Gardella used force to gain entry into Delgado's apartment. Given these factors, it was not an unreasonable decision by counsel to forgo making a *Payton* motion, and to emphasize instead the arguments that were most meritorious and upon which the defendant was most likely to prevail.

Moreover, defense counsel implicitly raised the illegality of Delgado's arrest by seeking a *Mapp* hearing (*Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). Of necessity, the trial court ruled that Delgado's arrest was lawful while he was in the process of ascertaining whether the search was legal and the fruits of it were required to be suppressed. (*See* Hearing Transcript at 50–51). The trial court made specific findings of fact at the *Mapp* hearing. Such findings support the conclusion that exigent circumstances justified the warrantless arrest and that the gun was properly seized because it was in plain view when Detective Gardella gained lawful entry into Delgado's apartment (Hearing Minutes at 50–51).

In addition, at trial, the defense attorney again sought to have the weapon possession charge dismissed on the basis that the gun was seized during an illegal search.

Trial Transcript (hereinafter "TT") at 296. Trial counsel's decision not to make a *Payton* motion cannot, therefore, be attributed to disinterested advocacy. Given the trial court's findings at the *Mapp* hearing which he restated at trial and in light of the testimony that was developed trial, there is ample basis to conclude that exigent circumstances justified the warrantless Delgado's arrest. It cannot fairly be said that the results of the trial were rendered unreliable because of the nonexistence of a formal *Payton* motion.

Furthermore, a careful review of the entire record, *see Kimmelman v. Morrison*, 477 U.S. 365, 386, 106 S.Ct. 2574, 2589, 91 L.Ed.2d 305 (1986) (generally appropriate to consider counsel's overall performance in assessing an alleged omission), reveals that petitioner's trial counsel acted vigorously and competently on his behalf. Trial counsel acted as a zealous advocate for Delgado by making several significant pretrial motions.[3] Trial counsel frequently voiced objections during the course of the trial (TT at 31, 40, 43, 45, 50, 54, 57–58, 60, 150, 151, 153, 180, 181, 182, 199, 205, 207, 209, 213, 234, 240, 241, 245, 246, 248, 269, 284, 370, 371, 375, 376, 378, 385, 386, 387, 388, 400, 401, 405, 406, 416, 418, 485), he made essential motions (292–297 (to dismiss the third and fourth counts of the indictment), 442–54, 466 (for a mistrial), 491–93 and he thoroughly cross-examined opposing witnesses (81–139, 157–65, 187–91, 214–33, 250–69, 270–76, 486–90). In addition, trial counsel called witnesses to testify on petitioner's behalf (311–441).

Trial counsel endeavored to persuade the jury to accept the defense's position, but the compelling evidence and not trial counsel's performance lead to a guilty verdict.

**2.** To determine whether exigent circumstances existed, courts consider the following factors: "(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect 'is reasonably believed to be armed'; (3) 'a clear showing of probable cause ... to believe that the suspect committed the crime'; (4) 'strong reason to believe that the suspect is in the premises being entered'; (5) 'a likelihood that the suspect will escape if not swiftly apprehended'; and (6) the peaceful circumstances of the entry." *United States v. Thomas*, 893 F.2d 482 (2d Cir.1990) (quoting

*Dorman v. United States*, 435 F.2d 385, 392–93 (D.C.Cir.1970) (en banc)). *See also United States v. Crespo*, 834 F.2d 267, 271 (2d Cir.1987), *cert. denied*, 485 U.S. 1007, 108 S.Ct. 1471, 99 L.Ed.2d 700 (1988); *United States v. Campbell*, 581 F.2d 22, 26 (2d Cir.1978).

**3.** Trial counsel to exclude evidence pursuant to *Mapp v. Ohio, supra, People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965) and *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

There was overwhelming evidence to support petitioner's conviction, including the testimony of two eyewitnesses to the shooting and two admitted friends of Delgado who testified against him with no apparent motive for so doing.

### B. Ineffective Assistance of Appellate Counsel.

Petitioner claims that his appellate counsel was ineffective because he did not raise the alleged ineffectiveness of trial counsel (namely, trial counsel's failure to make a *Payton* motion) and because he did not independently raise the illegality of petitioner's arrest.

In examining the ineffectiveness of appellate counsel, the Supreme Court stated in *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), that there is no obligation on the part of appellate counsel to "raise every 'colorable' claim suggested by a client." *Id.* at 754, 103 S.Ct. at 3314. Furthermore, in examining a claim of ineffectiveness of appellate counsel, judges "are not 'to second-guess reasonable professional judgments' by appellate attorneys as to what are the most promising issues for appellate review." *Tsirizotakis v. Le-Fevre*, 736 F.2d 57 (1984) (quoting *Jones v. Barnes*, 463 U.S. at 754, 103 S.Ct. at 3314).

■ Appellate counsel's decision not to raise trial counsel's ineffectiveness and the illegality of petitioner's arrest did not render his performance ineffective under the standards set out in *Jones v. Barnes*. As stated above, appellate counsel was under no obligation to raise every colorable claim and counsel raised and thoroughly researched and briefed several other compelling points: (1) that the trial court improperly curtailed defendant's evidence regarding his justification and extreme emotional disturbance defenses; (2) the trial court improperly failed to charge extreme emotional disturbance; and (3) the trial court erroneously admitted a videotaped post-arrest statement, violating defendant's right to remain silent, right to counsel, and his due process right to a fair trial. In addition, appellate counsel argued, in the alter-

native, that Delgado's sentence should be reduced because it was excessive given no prior criminal history.

That appellate counsel made a strategic decision not to raise the *Payton* issue was hardly an unreasonable tactical move. As stated more fully above, the facts overwhelmingly supported a finding of exigent circumstances and, appellate counsel, chose the issues that he believed, in his professional judgment, were most likely to result in a reversal on appeal. This court will not second guess that decision. For these reasons, I find that petitioner's claim of ineffectiveness of appellate counsel is without merit.

### C. Denial of Right to a Fair Trial.

Petitioner alleges that he was denied a fair trial on the grounds that the state trial court: (1) did not adequately consider a motion for reassignment of counsel; (2) denied petitioner the right to present a defense by excluding certain character evidence and evidence which would support petitioner's justification defense as well as by refusing to charge extreme emotional disturbance; (3) permitted certain individuals to act as interpreters who the defendant now alleges failed to convey information to petitioner during the course of the trial; and (4) improperly admitted a videotape made during petitioner's arrest.

#### 1. The Motion For Reassignment of Counsel.

Petitioner complains that the court failed to review his motion for reassignment of trial counsel. Such motion was based upon complaints that trial counsel failed to confer with petitioner in jail. *See* Motion for Reassignment of Counsel at 1. If "good cause" for a motion for reassignment of counsel exists, such motion should be granted. *See U.S. v. Calabro*, 467 F.2d 973, 986 (2d Cir.1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973).

Although the documentation of the denial of defendant's motion for reassignment

of counsel is apparently now missing,[4] I nevertheless find that any procedural flaw resulting from this confusion did not rise to the level of a constitutional violation. From the Delgado's own words at trial and from trial counsel's statements, it is clear that good cause did not exist for granting his motion for reassignment of counsel.

Specifically, petitioner's complaints of trial counsel's failing to confer with him are belied by the record. For instance, petitioner asserted that trial counsel had conveyed plea offers to him (TT at 19). In addition, immediately before trial, petitioner attempted to plead guilty and, in the course of his allocution which ultimately failed to satisfy the trial court, petitioner stated that he was phrasing his allocution in the manner that the "lawyer told me to do." (TT at 29). Furthermore, although petitioner claims that trial counsel did not visit him in jail, trial counsel stated that, "I spoke to the defendant in jail this morning. He refused to talk to me" (TT at 14–15). These statements and other ones made on the record indicate that petitioner's claim that trial counsel failed to visit him in jail and that he did not otherwise make efforts to communicate with Delgado is without merit. Therefore, petitioner would have been unable to show "good cause" for reassignment of counsel.

### 2. Denial of the Right to Present a Defense.

Petitioner complains that the trial court deprived him of the right to present a defense and therefore the right to a fair trial by excluding certain testimony offered in support of petitioner's justification defense and in support of petitioner's good character. In addition, petitioner claims it was error for the trial court to refuse to instruct the jury with respect to the defense of extreme emotional disturbance.

The Supreme Court has instructed that a criminal defendant's right to present a defense is one of the "minimum essentials of a fair trial." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). "The due process clause of the Fifth Amendment and the compulsory process clause of the Sixth Amendment guarantee each criminal defendant the right to present a defense." *United States v. Almonte*, 956 F.2d 27 (2d Cir.1992) (citing *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir.1988)).

### a. Limitation of Character Evidence and Justification Defense.

█ The transcript reveals that the trial court did not infringe on petitioner's right to present a defense by excluding certain testimony. To the contrary, the court's evidentiary rulings were entirely proper. With regard to the excluded testimony relating to the justification defense, the trial court actually allowed testimony as to defendant's reasons for purchasing a gun (TT at 346), and merely limited a line of irrelevant questioning about the details of defendant's prior hospital stay (TT at 346). The trial court also allowed Delgado to testify that he shot the victim in self-defense (TT at 345, 347–48).

As to the testimony by defendant's character witness, the trial court did not unduly limit such testimony. On the contrary, the trial court permitted defense witnesses to testify as to petitioner's reputation for truthfulness (TT at 316–17). As to any limitation of petitioner's character witness's testimony, it was the character witness himself who stated that he could not comment upon petitioner's reputation for peacefulness because he had not spoken with anyone regarding that subject (TT at 316). Therefore, I find that the grounds for petitioner's instant claim are baseless.

### b. Refusing to Charge Extreme Emotional Disturbance.

█ Petitioner also claims that the trial court denied him a fair trial by not charging the jury with the defense that, at

---

**4.** In the People's Opposition to the Motion to Vacate Judgment at 2 n. 1 it states: "An examination of the Supreme Court file revealed that defendant's motion for reassignment of trial counsel was denied on April 17, 1985, contrary to defendant's claim." However, in the People's Opposition to Petition for a Writ of Habeas Corpus at 19 n. 5 it states that "[a]t present, the Supreme Court, Kings County file cannot be located."

the time of the homicide, he acted under extreme emotional disturbance. Under New York law, extreme emotional disturbance is an affirmative defense to second degree murder. *See* N.Y.Penal Law § 125.25(1) (McKinney 1987). If a defendant establishes this affirmative defense by a preponderance of the evidence, the charge of Murder in the Second Degree is reduced to Manslaughter in the First Degree. N.Y.Penal Law § 125.20(2) (McKinney 1987).

■ New York courts have interpreted the state's extreme emotional disturbance affirmative defense to be appropriate only when the actions of a defendant are attributable to a "mental infirmity not arising [sic] to the level of insanity." *People v. Patterson*, 39 N.Y.2d 288, 302, 383 N.Y.S.2d 573, 582, 347 N.E.2d 898, 907 (1976), *aff'd*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). Whether such a state existed is determined by looking both to the subjective understanding of the actor and to any objective reasonable explanations or excuses for the actor's mental state. *See People v. Casassa*, 49 N.Y.2d 668, 678–679, 427 N.Y.S.2d 769, 775, 404 N.E.2d 1310, 1315–16, *cert. denied*, 449 U.S. 842, 101 S.Ct. 122, 66 L.Ed.2d 50 (1980). The Second Circuit has also stated that "[a]nger alone, however, does not amount to a mental infirmity or the loss of self-control associated with the defense of extreme emotional disturbance." *Rice v. Hoke*, 846 F.2d 160, 166 (2d Cir.1988).

In a case involving nearly identical facts to this one, *Rice v. Hoke, supra*, the defendant became involved in an altercation on the street, told his intended victim " 'I will be back,' " retrieved a loaded gun from his apartment building, and returned to the scene of the altercation, where he fired the gun "five times at close range." *Id.* at 166. The court in *Hoke*, based upon the aforementioned facts, found that the trial court was correct in refusing to charge the jury regarding the extreme emotional disturbance defense because it found that "the proof showed only that Rice [the defendant] was angry." *Id.* at 166.

■ Similarly, petitioner's nearly identical actions cannot be characterized as anything more than anger and thus did not rise to the level of extreme emotional disturbance. The trial court expressly noted this, (TT at 504), and this court fully concurs with that assessment of the evidence. At trial, Delgado repeatedly stated that, following the fistfight which was the catalyst of the subsequent shooting, he was not feeling anything which might demonstrate an extreme emotional disturbance (TT at 374). Defendant also explained the subsequent encounter which culminated in the shooting in a manner which conveyed that at all times he was aware of the nature and significance of his actions.

This court's review of the trial transcript supports the state trial judge's analysis. The evidence at petitioner's trial failed to demonstrate that the precipitate of petitioner's act was anything greater than anger. (TT at 504). The defense consistently argued self-defense before the jury and there was no evidence in the record to support a finding of Manslaughter. (TT at 495–99, 503–09).

Based on the evidence adduced at trial, the trial court's decision to not give the jury an instruction as to the defense of extreme emotional disturbance was proper, especially in light of the petitioner's own testimony. Notably, the trial court gave an extensive instruction with respect to justification defense. (TT 595–99).

### 3. The Interpreters.

Next, petitioner claims that he was denied due process and equal protection of the law because, first, he did not understand his interpreters and second, the trial court failed to ascertain the qualifications of the court interpreters. Specifically, petitioner claims that the interpreters failed to explain what was being discussed by his counsel, the trial court, and the State's attorney and that plea offers made by the State were not translated to him.

■ Although a defendant has the right to an interpreter who is "competent to render accurate translations," the right to challenge the competence of an interpreter "may be waived if not raised in timely

fashion." *U.S. v. Villegas*, 899 F.2d 1324, 1348 (2d Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990) (*citing Valladares v. United States*, 871 F.2d 1564 (11th Cir.1989)).

▆▆ An examination of the trial transcript reveals that the petitioner failed to alert the trial court of any problems with the interpreters. Petitioner's failure to object to the translation at trial defeats his claim because:

> [o]nly if the defendant makes any difficulty known to the court can the judge take corrective measures. To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse.

*Valladares v. United States*, 871 F.2d 1564, 1566 (11th Cir.1989); *accord United States v. Villegas*, 899 F.2d 1324, 1348–49 (2d Cir.1990). Delgado's failure to convey in any manner to the trial court the inadequacy of the interpreters prevents him from now seeking and be afforded relief on this claim.

### 4. Introduction of the Videotape.

Finally, petitioner claims that the admission of a videotape into evidence which contained a request by petitioner in English that he be able to speak with a lawyer, deprived him of his right to a fair trial. Petitioner also claims that the admission of the videotape into evidence also deprived him of his right to remain silent and his right to counsel.

▆▆ The facts leading up to the admission of the tape into evidence are significant. Apparently, at trial, petitioner asserted that he did not understand English and, on that basis, the defense argued that Delgado's alleged confession was fabricated by the arresting officer. Petitioner adamantly stated that he neither spoke nor understood English, and therefore could not have made the confession to the detective which was attributed to him. (TT at 355).

To rebut this position, the State sought to introduce the videotape to demonstrate that petitioner was indeed capable of speaking English to the arresting officer. On the videotape, the petitioner is seen and heard stating, in English, that before he would speak to the police, he wanted to speak to his lawyer first.

Before admitting the videotape, the trial court reviewed it *in camera.* The court then ruled that showing the jury the videotape for the limited and exclusive purpose of rebutting the defense contention did not amount to a deprivation of petitioner's right to silence, right to counsel or due process right to a fair trial. The trial court specifically based his finding of admissibility on the fact that it was being used in the rebuttal case only. I agree with this analysis.

The defendant opened the door to this issue and the State attempted to introduce the videotape only to rebut the accusation of fabrication. Although it would have been better for the court to give the jury a limiting instruction in this regard, the State did not make any impermissible arguments or references to the tapes, but only used it to demonstrate to the jury that Delgado had a sufficient ability to speak English to make the confession that the police officer testified that Delgado had made. These facts do not support a conclusion that petitioner's right to a fair trial, right to counsel or right against self-incrimination were violated by the admission of the videotape.

▆▆ Although this court does not construe the admission of the videotape into evidence as rising to the level of a constitutional violation,[5] the court finds that even if it did rise to such level, any error by the trial court was harmless error beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). There was compel-

---

**5.** Ordinarily, evidentiary errors in a state trial court are not reviewable in a federal *habeas* petition absent a constitutional violation. *Holmes v. Keane,* 90 Civ. 4146, 1992 WL 27123 (S.D.N.Y. Jan. 29, 1992); *Mitchell v. Smith,* 481 F.Supp. 22 (E.D.N.Y.1979), *aff'd,* 633 F.2d 1009 (2d Cir.1980), *cert. denied,* 449 U.S. 1088, 101 S.Ct. 879, 66 L.Ed.2d 814 (1981).

ling evidence of defendant's guilt adduced at trial.

### REMAINING CLAIMS

 Petitioner also raises several other claims which do not rise to the level of a federal constitutional violation or which are otherwise not reviewable by this court. Specifically, petitioner seeks to have this court revisit the Fourth Amendment claim that his arrest and the search of his home were not based upon probable cause. Such ground, however, is not a basis for federal habeas corpus relief "unless the state denied the prisoner the opportunity for full and fair litigation of the claim." *Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir.1991) (citing *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)). *Accord Jackson v. Scully*, 781 F.2d 291, 297 (2d Cir.1986); *Styers v. Smith*, 659 F.2d 293, 294 n. 1 (2d Cir.1981). Because petitioner did in fact receive a full and fair hearing on this issue, the court is now precluded from reexamining the claim.

 In addition, petitioner also asserts that the trial court's failure to state the grounds for denial of petitioner's motion to vacate the judgment, pursuant to New York Criminal Procedure Law § 440.10 denied him the ability "to pursue a meaningful and intelligent appeal." (Petitioner's Traverse at 4). New York Criminal Procedure Law § 440.30(7) specifically instructs that a court, in denying a motion to vacate, "must set forth on the record its findings of fact, its conclusions of law and the reasons for its determination." N.Y.Crim. Proc.Law § 440.30(7) (McKinney 1987).

Petitioner's complaint about the trial court's noncompliance with § 440.30(7), a state law, is not a basis for issuing a writ of habeas corpus. *Turner v. Sullivan*, 661 F.Supp. 535, 540 (E.D.N.Y.1987), *aff'd*, 842 F.2d 1288 (2d Cir.), *cert. denied*, 487 U.S. 1240, 108 S.Ct. 2913, 101 L.Ed.2d 944 (1988). To merit the issuance of a writ, petitioner's sentence must violate the Constitution, laws or treaties of the United States. *Rose v. Hodges*, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). Furthermore, "[a] federal court may not issue

the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984). Given petitioner's access to the voluminous papers regarding his case, the trial court's failure to state grounds for denial of the motion to vacate petitioner's conviction did not deprive him of the ability to make a meaningful appeal. Therefore, any error of state law did not rise to the level of a violation of federal due process rights and thus does not merit further review by this court. It is not a valid for the basis issuance of a writ of habeas corpus.

### CONCLUSION

After examining the claims raised by Delgado in the instant petition, the court finds them to be without merit. Therefore, the court denies the request for habeas corpus relief.

So ordered.