**Warren HARRIS, Plaintiff-Appellant,**

v.

**Charles SCULLY, Superintendent, Green Haven Correctional Facility, Defendant-Appellee.**

**No. 104, Docket 83–2393.**

United States Court of Appeals, Second Circuit.

Argued Sept. 3, 1985.
Decided Dec. 19, 1985.

Susan Hofkin Salomon, New York City (William E. Hellerstein, of counsel), for plaintiff-appellant Warren Harris.

John Castellano, Asst. Director Atty., Queens County (John J. Santucci, Dist. Atty. for Queens County, Kew Gardens, N.Y., of counsel), for defendant-appellee Charles Scully.

Before FRIENDLY, PIERCE, and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Warren Harris appeals the denial by the United States District Court for the Southern District of New York, Lee P. Gagliardi, *Judge,* of his petition pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus. Harris was convicted after a jury trial in the New York Supreme Court, Queens County, of manslaughter in the first degree. His conviction was affirmed by the appellate division, second department, *People v. Harris,* 88 A.D.2d 1111, 451 N.Y.S.2d 540 (2d Dep't 1982), and leave to appeal to the New York court of appeals was denied, *People v. Harris,* 57 N.Y.2d 686, 454 N.Y.S.2d 1047, 440 N.E.2d 541 (1982). He now alleges constitutional violations in the trial court's denial of his requests to charge the jury on the defense of justification as it relates to defense of third parties and on the lesser included offense of second degree manslaughter. We affirm the denial of the

petition, but for reasons different from those advanced by the district court.

## BACKGROUND

The events that led to petitioner's conviction arose out of a family argument. John, Alonzo, and Larry Harris lived with their mother, Dorothy. Petitioner, another of the Harris brothers, lived in the basement of the same house with his wife, Vanessa. During the afternoon of June 4, 1978, John began to argue with his mother. Apparently drunk, John cursed at his mother and threw her down on her bed. When she told him to leave the house, he refused and tore the phone out of the wall. Hearing this dispute, petitioner went upstairs to intervene.

Petitioner telephoned the police, and when two officers came to the house, petitioner's mother sought to have John arrested. Petitioner warned one of the officers that he would kill John if he was not removed from the family home. The officers declined to arrest John, but did order him to leave the house. Almost immediately after the officers left, however, John returned to the house, kicked open the front door, and began screaming that he was going to kill the other family members. John started fighting with Alonzo—apparently attempting to choke him—and the two struggled out of the house and into the street.

Petitioner also went outside and soon engaged in the fight that was to prove fatal to John. According to the testimony of his brother, Larry, petitioner had earlier walked out of the kitchen with a knife up his sleeve and, when John broke back into the house and began struggling with Alonzo, petitioner drew out the knife and followed them into the street. After Alonzo broke away from John, it is unclear whether he ran back inside, or whether he remained outside during the fatal fight.

A neighbor who witnessed the incident outside the Harris house testified that the deceased, who was lying on the ground at the time, was stabbed three or four times by a man in a green jacket who was standing over him. As the Harris family was new to the neighborhood, the neighbor could not identify the participants by name. This neighbor further testified that the deceased had no weapon in his hands during the struggle and also that someone, whom he could not identify, was attempting to restrain the man in the green jacket. Other testimony established that petitioner was wearing a green jacket on the day of the killing, and there is no issue whether petitioner actually killed his brother.

John died as a result of four stab wounds. The first stab entered his shoulder and back, the second pierced his cheek, the third entered the muscle around his mouth, and the fourth and most serious penetrated his liver and lungs with sufficient force to cause the knife blade to break off in his body. There was testimony from another neighbor that she saw petitioner standing over the decedent kicking him in the head while he lay bleeding on the ground.

Although petitioner was indicted for second degree murder, at trial the jury was instructed on the law of both second degree murder and the lesser included offense of first degree manslaughter. With respect to petitioner's proffered defenses, the trial judge instructed the jury on justification as it relates to self defense, but refused petitioner's request to charge on justification as it relates to defense of third parties. The trial judge also refused petitioner's request to charge on a second lesser included offense, second degree manslaughter, which, in New York, involves recklessly causing the death of another. See N.Y.Penal Law § 125.15(1) (McKinney 1975). The jury convicted petitioner of first degree manslaughter, and he was sentenced to seven and one-half to fifteen years.

## DISCUSSION

A. *Exhaustion of State Remedies.*

■ Initially we must address the state's contention, raised for the first time on appeal, that petitioner failed to exhaust his state remedies and, therefore, may not

raise on habeas corpus the trial court's failure to instruct the jury on defense of others. Of course, a petitioner must normally exhaust his state remedies before he may seek habeas corpus relief in the federal courts. *See Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). The state argues that petitioner, who here claims that the justification defense negates elements of the crimes charged and thereby requires the state to disprove that defense beyond a reasonable doubt, presented the state courts with only a generalized argument that the failure to instruct the jury on defense of others denied petitioner due process. The state places particular emphasis on petitioner's failure to cite the same authority in the New York state courts that he relies on before this court. We reject the state's exhaustion analysis.

In *Daye v. Attorney General,* 696 F.2d 186 (2d Cir.1982), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984), this court, sitting in banc, noted that the exhaustion requirement demands that a habeas corpus petitioner "have informed the state court of both the factual and the legal premises of the claim he asserts in federal court", *id.* at 191. Since the factual issues before this court are the same as those before the state court, the important question here is whether the legal issue is the same. Presenting the same legal issue essentially requires demonstrating that it is likely that the state court was alerted to the federal nature of the claim. *Id.* at 192. Here, unlike the petitioner in *Daye,* who did not cite to the state court any provisions of the United States Constitution, Harris cited the fifth and fourteenth amendments, and alleged in at least two places in his brief to the appellate division that the trial court had committed constitutional error by refusing his requested instruction on justification as it relates to the defense of others.

That petitioner did not cite the same cases to the state court that he now cites to this court does not negate that, for exhaustion purposes, the legal basis of his claim is the same. As we noted in *Daye,* "[b]y the

same legal 'basis' or 'doctrine,' we do not mean that there can be no substantial difference in the legal theory advanced to explain an alleged deviation from constitutional precepts." *Id.* at 192 n. 4.

■ Because of the importance of the exhaustion principle to federal-state comity, we have addressed the state's exhaustion argument even though it was not presented to the district court. Nevertheless, we wish to make clear that the decision to consider an exhaustion claim not raised below rests in our discretion, *see United States ex rel. Johnson v. Vincent,* 507 F.2d 1309, 1312 (2d Cir.1974), *cert. denied,* 420 U.S. 994, 95 S.Ct. 1435, 43 L.Ed.2d 678 (1975), and we are troubled by the state's failure to raise this potentially dispositive issue until defense counsel, the district court, and this court had all expended time and effort addressing the merits of this petition.

B. *Refusal to Instruct the Jury on Justification as it Relates to Defense of Third Parties.*

Justification, as a defense to a homicide prosecution, allowed the defendant to allege "that his use of physical force upon the alleged victim was not unlawful since it was necessary to protect himself or others from the victim's aggression." *People v. Miller,* 39 N.Y.2d 543, 548, 384 N.Y.S.2d 741, 745, 349 N.E.2d 841, 845 (1976); *see also* N.Y.Penal Law § 35.15 (McKinney 1975). While the trial judge instructed the jury on the law of justification as it related to petitioner's self defense, he nevertheless refused that part of petitioner's requested charge on justification that related to his defense of third parties. Petitioner argues that the evidence produced at trial demonstrated that when he killed his brother, John, he was acting to defend both himself and members of his family. In other words, petitioner contends that the jury should have been permitted to determine whether he reasonably believed that both he and, in particular, his mother and his brother, Alonzo, were in danger from

John's imminent use of deadly physical force.

A criminal defendant may not constitutionally be convicted unless the prosecutor presents "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Arguing that justification would negate criminal conduct and criminal *mens rea*, petitioner contends that the existence of a justification defense nullifies an element of the crime charged. To support this contention, petitioner points to prefatory language in the statutory provisions on justification that provides that "[t]he use of physical force upon another person which would otherwise constitute an offense is justifiable and *not criminal* * * *." N.Y.Penal Law § 35.10 (McKinney 1975) (emphasis added). Extrapolating from this language, the petitioner posits that in order to establish all the elements of the crime charged here, the prosecutor was constitutionally required to prove the absence of justification beyond a reasonable doubt. Petitioner concludes that once he had offered some evidence of justification based on defense of others it was constitutional error for the trial judge not to instruct the jury on the defense, because this, in effect, relieved the prosecutor of having to prove all the elements of the crime beyond a reasonable doubt.

■ Support for the trial judge's decision to instruct the jury on self defense only and not on the defense of others is found, however, in an important factual distinction. Except for two instances not relevant here, a person is expressly prohibited under New York law from using deadly physical force against another unless "[h]e reasonably believes that such other person is using or about to use deadly physical force." N.Y.Penal Law § 35.15(2)(a) (McKinney Supp.1974–1984). The record indicates that at the time of the stabbing petitioner alone was struggling with John, or, at best, that Alonzo was attempting to pull petitioner away from John; there was no immediate physical struggle with, or imminent threat to, either Alonzo or petitioner's mother. In short, no version of the events warrants an inference that petitioner reasonably believed that, at the time of the killing, John was using or was about to use deadly physical force against any other family member. Petitioner himself, however, was engaged in an outright fight with John at the time. Thus, there was no error in the trial judge's decision to charge on self defense and not on defense of others.

The district judge approached the problem differently, however. He reasoned, first, that absence of justification is not an element of either second degree murder or first degree manslaughter in New York, and second, that petitioner had not produced sufficient evidence of justification to negate any of the elements of the crimes charged. In addressing this second rationale, the district court held that "because the petitioner has not met his burden of producing some evidence in support of those aspects of his asserted defense which might negate the elements of the relevant crimes, the prosecution does not have the burden of persuading the jury beyond a reasonable doubt that the defense is inapplicable." *Harris v. Scully*, No. 83 Civ. 2459, slip op. at 10 (S.D.N.Y. Nov. 21, 1983). We agree that absence of justification is not an element of second degree murder or first degree manslaughter in New York, but we disagree with the district judge's assumption that justification could negate elements of those crimes.

As the statutory defense is viewed in New York, justification does not negate any of the elements of second degree murder, or first degree manslaughter, or any other crime. Rather, it reflects a legislative judgment that the circumstances surrounding an otherwise criminal act warrant an exception to the criminal liability that ordinarily would attach.

We have held that a defendant does not concede the intent to kill by asserting the defense of self defense. *See Ramirez v. Jones*, 683 F.2d 712, 716 (2d Cir.1982), *cert. denied*, 460 U.S. 1016, 103 S.Ct. 1260, 75

L.Ed.2d 487 (1983). Rather, one can act in self defense, as in defense of others, consistently with a number of possible intentions. "[O]ne can shoot to kill in self-defense, shoot to wound in self-defense, shoot to frighten in self-defense, or even shoot reactively in self-defense with no specific purpose." *Mason v. Balkcom,* 669 F.2d 222, 227 (5th Cir.1982), *cert. denied,* 460 U.S. 1016, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983); *see also Ramirez,* 683 F.2d at 716. Conversely, the presence of a claim of justification does not negate the intent to kill, or, for that matter, any other criminal intent. Instead, justification is a defense that renders noncriminal an otherwise criminal act, regardless of the defendant's intent.

### C. *Refusal to Instruct the Jury on Second Degree Manslaughter.*

Petitioner was tried on an indictment charging him with second degree murder and was ultimately convicted of the lesser included offense of first degree manslaughter. Petitioner had requested that the jury also be instructed on another lesser included offense, second degree manslaughter, contending that the evidence of the circumstances surrounding his brother's death offered a view that he had acted in reckless disregard of his brother's life. The trial judge refused to instruct the jury on second degree manslaughter, and the district judge denied petitioner's habeas claim on this issue on the ground that such a lesser included offense charge was not warranted on the evidence as a matter of state law.

It is questionable whether the failure to give a lesser included offense charge in a noncapital case should be cognizable in a habeas corpus proceeding. The Supreme Court has determined that the death penalty may not constitutionally be imposed when the jury is not permitted to consider a warranted lesser included noncapital offense. *See Beck v. Alabama,* 447 U.S. 625, 627, 100 S.Ct. 2382, 2384, 65 L.Ed.2d 392 (1980). Nevertheless, the *Beck* Court expressly left open the question of whether due process requires a lesser included of-

fense instruction in a noncapital case, such as we have here. *See id.* at 638 n. 14, 100 S.Ct. at 2390 n. 14. We need not decide that issue in this case, because we agree with the district judge that, as a matter of state law, the evidence did not warrant submission of the lesser charge to the jury.

■ Even in a capital case a lesser included noncapital offense need be submitted to the jury only when there is evidence to support the lesser verdict. *Hopper v. Evans,* 456 U.S. 605, 610, 102 S.Ct. 2049, 2052, 72 L.Ed.2d 367 (1982). This being a noncapital case, petitioner was entitled to no greater constitutional protection than he would have received in a capital case, and, since, as demonstrated below, there was insufficient evidence to support an instruction on second degree manslaughter, his claim on this point cannot succeed.

The New York court of appeals follows a two-part test to determine entitlement to a lesser included offense instruction: first, it must be impossible to commit the greater crime without committing the lesser crime, and second, the defendant must "show that there is a reasonable view of the evidence in the particular case that would support a finding that he committed the lesser offense but not the greater." *People v. Glover,* 57 N.Y.2d 61, 63, 453 N.Y.S.2d 660, 661, 439 N.E.2d 376, 377 (1982); *see also* N.Y.Crim.Proc.Law §§ 1.20 (subd. 37), 300.-50 (McKinney 1982). There is no dispute that the first part of this test was satisfied in this case; the issue focuses on the second.

In the context of this case, the distinction between first degree manslaughter, for which the petitioner stands convicted, and the lesser crime of second degree manslaughter is that the former requires an intent to cause serious physical injury, *see* N.Y.Penal Law § 125.20(1) (McKinney 1975), while the latter concerns merely causing the death of another recklessly, *see id.* § 125.15(1). Thus, a prima facie case of second degree manslaughter in New York entails "the creation of a substantial and unjustifiable risk; an awareness and dis-

regard of the risk on the part of defendant; and a resulting death." *People v. Licitra,* 47 N.Y.2d 554, 558, 419 N.Y.S.2d 461, 463, 393 N.E.2d 456, 459 (1979).

■ The evidence of this killing simply does not permit an instruction on second degree manslaughter, for it is inconsistent with the notion that petitioner killed his brother recklessly. Petitioner told the police he would kill John if John returned; he concealed a knife in his sleeve before following John and Alonzo out of the house; he attacked and stabbed John four times while he had him on the ground; and he then repeatedly kicked John in the head following the fatal stabbings. Such evidence points not toward recklessness but rather to an intent to cause John serious physical injury. "[T]he jury should not be permitted to choose between the crime charged and some lesser crime where the evidence essential to support a verdict of guilt of the lesser necessarily proves guilt of the greater crime as well * * * ". *People v. Discala,* 45 N.Y.2d 38, 43, 407 N.Y. S.2d 660, 664, 379 N.E.2d 187, 191 (1978); *see also People v. Scarborough,* 49 N.Y.2d 364, 369–70, 426 N.Y.S.2d 224, 227, 402 N.E.2d 1127, 1129 (1980).

Thus, we agree with Judge Gagliardi's determination that because the evidence offered no basis for the jury to have "discredited the evidence that petitioner intended to kill the deceased or to injure him seriously, while accepting the premise that petitioner acted in reckless disregard of the deceased's life" it would have been improper to have given an instruction on second degree manslaughter.

## CONCLUSION

The denial of Warren Harris's petition for writ of habeas corpus is affirmed.