**Terrance JONES, Petitioner,**

v.

**Hubert J. SPECKARD, Superintendent of Groveland Correctional Facility, Respondent.**

**No. 88–CV–688E.**

United States District Court, W.D. New York.

June 15, 1993.

See also 134 A.D.2d 915, 522 N.Y.S.2d 70.

Robert C. Weissflach, Ginger D. Schroder, Jaeckle, Fleischmann & Mugel, Buffalo, NY, for petitioner.

Robert Abrams, Atty. Gen. of State of N.Y., William D. Maldovan, Asst. Atty. Gen., Buffalo, NY, for respondent.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

In this petition for habeas corpus relief under 28 U.S.C. § 2254, the parties have consented to having the Magistrate Judge conduct all proceedings in the case, including entry of final judgment.

For the reasons set forth below, the Petition is dismissed and final judgment is entered in favor of Defendant.

Petitioner, Terrance Jones, was indicted in November, 1983, along with his brother, Kevin Jones, for one count of attempted murder in the second degree and two counts of assault in the second degree. The charges stemmed from a fight which took place in Niagara Falls, New York in the early morning hours of October 2, 1983. In January, 1984, following the death of the victim, the attempted murder charge was changed to murder in the second degree.

On August 5, 1985, Petitioner was convicted of first degree manslaughter and third degree assault following a jury trial in New York State Supreme Court, Niagara County. He was sentenced to 9 to 18 years on the manslaughter conviction and one year on the assault conviction, with the sentences to run concurrently. On direct appeal to the Appellate Division, Fourth Department, Petitioner's sentence was vacated, his conviction, as modified, was affirmed and the case was remanded for resentencing. *People v. Jones*, 134 A.D.2d 915, 522 N.Y.S.2d 70 (4th Dept. 1987). The trial judge resentenced Petitioner to the same 9 to 18–year indeterminate term. On May 19, 1988, the Court of Appeals denied leave to appeal. *People v. Jones*, 71 N.Y.2d 1028, 530 N.Y.S.2d 563, 526 N.E.2d 56 (1988).

On June 29, 1988, Petitioner filed this action. He raises two grounds for relief in his amended [1] habeas corpus petition: (1) failure to instruct the jury on manslaughter in the second degree as a lesser included offense, and (2) improper jury instruction on accessory liability.

### *FACTS*

At Petitioner's trial, the witnesses testified as follows:

#### *The Testimony of Sammy Ollison*

Sammy Ollison testified that he met Petitioner for the first time on October 2, 1983, as he was going into the Game Room bar on East Falls Street in Niagara Falls, New York (T. 235).[2] Ollison bought Petitioner a beer, and Petitioner asked for a ride across town (*id.*). Ollison and Petitioner left the Game Room, and got in Ollison's car. They drove about a half-block to Ollison's house on Memorial Parkway, where Ollison picked up his reading glasses (T. 235–37). Ollison turned the car around and drove back in the direction of East Falls Street. At Petitioner's request, Ollison stopped at Brother's Bar, on the corner of Memorial and East Falls (T. 237). Petitioner went into the bar and Ollison went over to speak with Keith Sylvester who was standing near his car with his sister, La Veda Sylvester (T. 238).

Five minutes later, Petitioner left the bar and asked Ollison if he was ready to leave (T. 241). As Petitioner and Ollison were walking away from Keith Sylvester's car, La Veda Sylvester said something to Petitioner (T. 242). Petitioner turned back toward Ms. Sylvester and knocked her down, saying "bitch, leave me alone" (T. 242). Keith Sylvester and Petitioner then began fist fighting and wrestling, ending up in the middle of East Falls Street (T. 243).

---

**1.** Petitioner raised five grounds for relief in his original petition. On September 28, 1989, petitioner was granted leave to file a supplemental petition which raised a sixth claim. On March 21, 1991, counsel was assigned to represent Petitioner, and further opportunity to amend the petition was granted. On November 2, 1992, an amended petition was filed, asserting four grounds for relief. Respondent answered on December 1, 1992, raising an exhaustion of state court remedies defense with respect to two of the grounds raised in the amended petition. By stipulation filed on January 4, 1993, the petition was again amended to delete the two unexhausted grounds, leaving the two grounds for relief discussed herein.

**2.** References preceded by "T" are to pages of the trial transcript, submitted as part of the Respondent's answer.

Ollison further testified that La Veda Sylvester jumped into Ollison's car and attempted to run Petitioner down, but the car stalled (T. 243, 318). In the meantime, Petitioner and Keith Sylvester were still fighting in the street. Petitioner pinned Keith Sylvester down and continued to punch him with his fists (T. 245). Eventually, Petitioner got up, leaving Keith Sylvester motionless on the ground (T. 246). Ollison heard Petitioner say "you ain't going to fuck with anybody anymore" (*id.*). He then saw Petitioner walk to a small open field and come back with a board in his hands (T. 246–47).

La Veda Sylvester was leaning over Keith, who said to Petitioner "you done killed my brother" (T. 247). Ollison testified that Petitioner hit La Veda Sylvester with the board, knocking her out of the way, and then Petitioner proceeded to hit Keith Sylvester with the board "ten or twelve times" (T. 248–49). He then threw the board into the field and walked toward the parking lot of the County Building (T. 249).

On cross-examination, Ollison testified that he had been close friends with Keith Sylvester for over 20 years (T. 253). He also testified that he never saw a knife at any time during the incident (T. 274), nor did he ever see Petitioner's brother Kevin Jones (T. 292–93).

### The Testimony of La Veda Sylvester

La Veda Sylvester testified that when she first saw Petitioner he asked her if she wanted "some reefers". She told him no, she already had some. Petitioner said "f—— you, bitch," and walked away. She testified that she was walking by Ollison's car when Petitioner came up to her and punched her in the face, knocking her down (T. 316).

La Veda Sylvester testified that her brother Keith Sylvester began arguing with Petitioner. Keith Sylvester then got into Ollison's car with La Veda Sylvester and another woman named Cloriss. Petitioner opened the car door and cut Keith Sylvester's face. Petitioner then pulled Keith Sylvester out of the car, and Kevin Jones jumped on Keith's back. La Veda Sylvester got out of the car and pulled Kevin Jones off her brother. Kevin Jones and La Veda Sylvester were struggling while Petitioner and Keith Sylvester were fighting in the street (T. 317–18).

La Veda Sylvester got away from Kevin Jones and got into Ollison's car to try to run down Petitioner. The car stalled, and Petitioner pulled La Veda Sylvester out of the car. He then went back over to Keith Sylvester and continued to hit him (T. 318–19). La Veda Sylvester tried to reach her brother, but was stopped again by Kevin Jones, who cut her on the leg (T. 319). She finally reached Keith Sylvester, who was by then lying motionless in the middle of East Falls Street (T. 320).

La Veda Sylvester testified that when she reached her brother, she told Petitioner to leave him alone. Petitioner left, and came back with a board. He hit her with the board, and began hitting Keith Sylvester in the head with the board (T. 321–24). She also testified that Petitioner cut Keith Sylvester's face again (T. 325).

### The Testimony of Dennis Gulley

Dennis Gulley testified that he was drinking with some other people in front of Beck's store on the corner of East Falls Street and 10th Street when he observed what appeared to be a fight in front of Brother's Bar (T. 380–81). As he approached, he saw a man lying on the ground being punched by another man (T. 386). Gulley testified that the man on top had a razor or a box cutter in his hand (T. 387–88). Someone in the crowd told him that it was Keith Sylvester on the ground. Gulley knew Sylvester, and walked over and told the man on top to "leave the boy alone, you already beat him up" (T. 388). The man on top started to move toward Gulley, but Gulley backed away (T. 389–90). He testified that he saw somebody get hit with a stick, but couldn't tell who it was because he was some distance away (T. 396). Gulley was unable to identify Petitioner in court as the man involved in the fight (T. 392).

### The Testimony of Donald Streeter

Donald Streeter testified that he was walking in the direction of Brother's Bar on October 2, 1983 when he saw Terrance and Kevin Jones fighting with La Veda and Keith Sylvester (T. 400–401). He saw Kevin Jones

kicking La Veda Sylvester in the stomach and in the head, and Petitioner beating Keith Sylvester. He then saw Petitioner slash Keith Sylvester across the face with what appeared to be a knife (T. 403). La Veda Sylvester got Keith Sylvester into a car, but Petitioner dragged him out (T. 404–05). The fight continued into the street. Petitioner was beating Keith Sylvester and stomping on his head (T. 407–08). Petitioner then went into a field and got a board, and started beating Keith Sylvester with it (T. 409). The police arrived, and Petitioner ran in the direction of 10th Street (T. 411).

### The Testimony of Officer Patak

Police Officer Ernie Patak testified that at approximately 4:30 a.m. on October 2, 1983, he was called to the area of East Falls and Memorial Parkway on a report of a "cutting" (T. 140–41). When Patak arrived, he observed a man lying in the street with his head in the lap of a woman. The couple was later identified as Keith and La Veda Sylvester (T. 142–44). Patak observed that Keith Sylvester had blood on his head and clothes and appeared to be unconscious, and that La Veda Sylvester had blood on her arms and clothes and was hysterical (T. 144–45).

After radioing for an ambulance, Patak observed two men engaged in an altercation. One of the men, later identified as the Petitioner, was throwing punches at the other man (T. 171). Patak and Captain Williams, who had arrived at approximately the same time as Patak, walked over and broke up the fight (T. 146–47). At this point, the ambulance arrived and the officers returned to the victim (T. 147). A second fight broke out between Petitioner and the second man and officers Patak, Winegarden (who had recently arrived) and Captain Williams broke up that fight (T. 149). Patak then left to follow the ambulance to the hospital (T. 152).

### The Testimony of Officer Winegarden

Officer Thomas Winegarden also testified. Upon learning that Petitioner was a suspect, Winegarden had a conversation with Officer Maziowski and then the two officers got into their cars and proceeded to the spot where Petitioner was standing (T. 178–79, 200). As Maziowski got out of his car, Petitioner and the other man started to run (T. 179, 200).

Winegarden and Maziowski chased Petitioner and eventually caught and subdued him and transported him to the police station (T. 181–83, 202).

At the scene of the crime, officers found a razor (T. 62, 93, 113), and a piece of wood with blood on it (T. 63, 184).

At the hospital, La Veda Sylvester was treated for a head injury and cuts to her arm and leg and then released (T. 329). She gave a statement to the police that she had been struck with a board and cut with a knife by Kevin Jones, Petitioner's brother (T. 92). Keith Sylvester arrived at the hospital in a coma from which he never recovered (T. 470, 482). He died on December 28, 1983, from head trauma and cerebral contusions (T. 482, 484).

### The Testimony of Douglas Haslip

Douglas Haslip testified for the defense. Haslip testified that he left Brother's Bar about closing time, and had a conversation with his sister and Donald Streeter (T. 528–29). After about ten or fifteen minutes, Haslip saw La Veda Sylvester standing on the corner across the street (T. 530). He then saw Petitioner come out of Holloway's Bar and walk past La Veda Sylvester. He heard La Veda Sylvester use profane language, and he heard La Veda Sylvester tell Petitioner that she would get her brother to "whoop his ass" (T. 531). Petitioner waved his hand at La Veda Sylvester, and kept walking (id.). La Veda Sylvester ran after Petitioner, repeating that she would get her brother to "kick [his] ass," but Petitioner kept walking (T. 532).

Haslip testified that he then saw Keith Sylvester come out of Holloway's Bar, run after Petitioner, and start fighting with him (T. 533). Keith Sylvester and Petitioner struggled on the ground for four or five minutes. Haslip then saw a car make a quick U-turn in the direction of the fight, but the car stopped. Petitioner tried to shield himself from the car with Keith Sylvester (T. 534). Keith Sylvester broke away, and pulled a knife (T. 534). Petitioner tried to run but he stumbled when Keith Sylvester grabbed the collar of his shirt (T. 535). As

they fell to the ground, Keith Sylvester swung the knife at Petitioner (*id.*).

Haslip then saw Petitioner pick up a stick and hit Keith Sylvester two or three times then walk away (T. 535–36). Kevin Jones then approached Keith Sylvester and started fighting (T. 537). Kevin Jones picked up the stick and began hitting Keith Sylvester (T. 537). Haslip also saw Kevin Jones use a knife (T. 538).

### The Testimony of Petitioner

Petitioner took the stand in his own defense. He testified that he had walked to Brother's Bar from his mother's house, and had a drink there (T. 571–72). He came out of Brother's Bar and was walking east on Falls Street toward Sunny's Place (also called the Game Room), when he met Sammy Ollison (T. 572–73). He had a drink of rum with Ollison, and got into Ollison's car. Ollison said he wanted to drive home to pick something up, and drove past Brother's Bar to make a U-turn. Petitioner then got out of the car and went to Holloway's Bar on Memorial Parkway, where he stayed for five or ten minutes (T. 574–75).

Petitioner testified that he left Holloway's and walked back up Memorial Parkway towards Brothers Bar, where he saw La Veda Sylvester standing next to Ollison's car at the corner of Memorial and Falls (T. 575). As Petitioner walked by, La Veda Sylvester mumbled something under her breath. Petitioner said "okay, go ahead on," and continued walking. La Veda Sylvester said "you ain't shit," and came towards Petitioner. Petitioner slapped La Veda Sylvester, and then Keith Sylvester appeared (T. 576).

Petitioner and Keith Sylvester began fist fighting, and moved out into the street (T. 577). Petitioner got on top of Keith Sylvester in "a good position" and continued to punch him. Petitioner then saw a car make a U-turn and come at them (T. 578). Petitioner and Keith Sylvester swung around out of the way of the car and let go of each other (T. 579). Petitioner then told Keith Sylves-

ter he did not want to fight but Keith Sylvester charged him. Petitioner turned to run and tripped on the curb. Petitioner noticed a board on the ground and picked it up and hit Keith Sylvester a "couple of times." Petitioner then dropped the board and walked away. (T. 579). Petitioner was then surrounded by police cars. He ran when one of the police officers sprayed him with mace (T. 581). He was apprehended a short time later in a back yard on 10th Street, near his mother's house (T. 582).

On cross-examination, the prosecutor asked Petitioner if he remembered talking to Detective Richard Clute on October 2, 1983. Petitioner indicated that he remembered talking to Detective Clute, but did not remember what he said (T. 585–86). The prosecutor then attempted to refresh Petitioner's recollection with a police report which included information on a prior oral statement Petitioner had made to Detective Clute[3] (T. 587). Petitioner first stated that the report refreshed his recollection (T. 587), but later stated that he did not remember what he said to Clute and the statement did not refresh his recollection (T. 588). Petitioner also stated that he never used a knife, never cut Keith Sylvester with a knife, and never told anyone that he used a knife (T. 589–90).

The prosecution then attempted to refresh Petitioner's recollection using Petitioner's plea. The plea was never identified to the jury. Petitioner continued to deny having cut or stabbed anyone (T. 590–91). Petitioner testified that he saw a blade of some type in Keith Sylvester's hands and he was cut on the palm of his hand by Keith (T. 592–93). The prosecution then unsuccessfully attempted to refresh Petitioner's recollection with a booking receipt which indicated that Petitioner only mentioned an injury to his right forefinger when he was booked (T. 597).

Petitioner further testified on cross-examination that he hit Keith Sylvester with a 2″ × 2″ stick which he found on a small grassy area between the street and the sidewalk.

---

**3.** The statement had previously been suppressed following a *Huntley* hearing in which it was determined that Clute knew that petitioner was represented by counsel in another pending matter at the time the statement was taken. The

trial court's admission of the statement was asserted as a ground for habeas corpus relief in the original petition, but this ground has not been presented on the amended petition now pending before this court.

As Petitioner walked away, Keith Sylvester fell to the ground and into the street (T. 608–12). He also testified that he did not see his brother Kevin Jones during the entire incident (T. 579, 617).

*The Testimony of Detective Clute*

The prosecution called Detective Richard Clute in rebuttal. Clute testified that at approximately noon on October 2, 1983, Petitioner asked to see him and, without being questioned, gave an oral statement as to the events of that morning (T. 622). Clute testified that Petitioner said he was in Ollison's car and fell asleep. He awoke when he heard his brother Kevin Jones fighting with Keith Sylvester. Petitioner said that he attempted to break up the fight. He said that he did not cut anyone, he did not hit anyone with a board and he did not know who did. (T. 623). Clute further testified that he did not recall whether Petitioner was bleeding at the time he made the oral statement (T. 624).

*The Jury Instructions*

During his instructions to the jury on the charge of murder in the second degree, the trial judge read from the indictment as follows:

The defendant [sic], on or about the 2nd day of October, 1983, in the City of Niagara Falls, State of New York, in the company of and assisting each other, did with the intent to cause the death of another person, to wit, that is to cause the death of Keith Sylvester by attacking him with a

knife and wooden board about the head and upper body.

(T. 726).

The judge also instructed the jury that even though the prosecution's theory of the case was that Petitioner and his brother Kevin "acted in concert with each other" (*id.*), they could "decide from the evidence that Kevin Jones had nothing to do with these crimes and that Terrence [sic] Jones was solely accountable. There's evidence to that effect" (T. 730).

The judge charged the jury on murder in the second degree [4] (T. 736–37) and the lesser included offense of manslaughter in the first degree [5] (T. 741–42), but refused a timely request by defense counsel to charge the jury on manslaughter in the second degree [6] (T. 633–34). The judge also charged the jury on the justification of self-defense (T. 744–52).

*DISCUSSION*

## I. Refusal of Court to Give Lesser–Included Offense Charge of Second Degree Manslaughter.

Petitioner's first claim is that he was denied due process when the court refused to submit the charge of second degree manslaughter to the jury as a lesser included offense of second degree murder.

As a general matter, "[i]n order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instruction

4. N.Y.Penal Law § 125.25 provides, in relevant part:
A person is guilty of murder in the second degree when:
1. With intent to cause the death of another person, he causes the death of such person or of a third person....

5. N.Y.Penal Law § 125.20 provides, in relevant part:
A person is guilty of manslaughter in the first degree when:
1. With intent to cause serious physical injury to another person, he causes the death of such person or of a third person....

6. N.Y.Penal Law § 125.15 provides, in relevant part:
A person is guilty of manslaughter in the second degree when:

1. He recklessly causes the death of another person....
In refusing to charge second degree manslaughter, the court engaged in the following colloquy with counsel:
THE COURT: That was not a reckless act. It was an intentional act. He admitted he swung the board at the—
MR. SBARBATI (defense counsel): We just make that request.
THE COURT: I deny that request. I would charge Manslaughter 1.
MR. DiMILLO (defense counsel): Our exception is continued.
THE COURT: Your exception is continued. I will charge Manslaughter 1 yes, Manslaughter 2 no....
(T. 634)

to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Casillas v. Scully,* 769 F.2d 60, 63 (2d Cir.1985); *see Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). The standard on a habeas corpus petition is "quite different" from the standard required of the federal appellate courts on direct review of proceedings in a federal criminal case. *Rogers v. Carver,* 833 F.2d 379, 381 (1st Cir.1987), *cert. denied,* 485 U.S. 937, 108 S.Ct. 1116, 99 L.Ed.2d 276 (1988). The habeas petitioner thus has the burden of meeting a very high standard— "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten, supra,* 414 U.S. at 147, 94 S.Ct. at 400.

The Supreme Court has held that in capital cases, failure to charge lesser included non-capital offenses, where the evidence warrants such a charge, violates the eighth amendment and the due process clause. *Beck v. Alabama,* 447 U.S. 625, 627, 100 S.Ct. 2382, 2384, 65 L.Ed.2d 392 (1980). However, the Court left open the question of whether due process requires a lesser included offense instruction in a non-capital case. *Id.* at 638 n. 14, 100 S.Ct. at 2390 n. 14.

The circuits that have considered this issue are divided. The Fifth, Ninth, Tenth and Eleventh Circuits have held that failure to instruct on the lesser included offense does not present a federal constitutional question and therefore will not be considered in a federal habeas proceeding. *See, e.g. Valles v. Lynaugh,* 835 F.2d 126, 127 (5th Cir.1988); *James v. Reese,* 546 F.2d 325, 327 (9th Cir. 1976); *Chavez v. Kerby,* 848 F.2d 1101, 1103 (10th Cir.1988); *Perry v. Smith,* 810 F.2d 1078, 1080 (11th Cir.1987). Others have held that a due process violation occurs only when the failure to give such an instruction in a non-capital case amounts to so fundamental a defect as to cause "a complete miscarriage of justice." *Tata v. Carver,* 917 F.2d 670, 671 (1st Cir.1990); *Bagby v. Sowders,* 894 F.2d 792, 797 (6th Cir.) *(en banc), cert. denied,* 496 U.S. 929, 110 S.Ct. 2626, 110 L.Ed.2d 646 (1990); *Nichols v. Gagnon,* 710 F.2d 1267, 1272 (7th Cir.1983), *cert. denied,* 466 U.S. 940, 104 S.Ct. 1918, 80 L.Ed.2d 465 (1984); *Deberry v. Wolf,* 513 F.2d 1336, 1338 (8th Cir.1975).

The Second Circuit has not yet ruled on this question. Although the issue has been raised in several cases, the court has declined to reach the issue, finding instead that the evidence did not warrant the lesser-included offense charge. See, e.g., *Campaneria v. Reid,* 891 F.2d 1014, 1022 (2d Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 1419, 113 L.Ed.2d 471 (1991); *Rice v. Hoke,* 846 F.2d 160, 165 (2d Cir.1988); *Harris v. Scully,* 779 F.2d 875, 880 (2d Cir.1985).

■ It is likewise unnecessary in this case to decide whether the failure to give an instruction as a lesser-included offense presents a constitutional claim. This is because the trial court correctly ruled that the evidence did not warrant the instruction.

It is not disputed that second degree manslaughter is a lesser-included offense of second degree murder. *Campaneria v. Reid, supra,* 891 F.2d at 1022; *People v. Sullivan,* 68 N.Y.2d 495, 501–02, 510 N.Y.S.2d 518, 522, 503 N.E.2d 74, 77 (1986). The question is whether a reasonable view of the evidence would have supported a finding that the Defendant committed second degree manslaughter—recklessly[7] causing the death of another—rather than first degree manslaughter—causing the death of another while intending to cause serious injury to such other. *Rice v. Hoke, supra.*

■ This does not mean, as Petitioner contends, that the trial court must be able to exclude every reasonable hypothesis of recklessness. This test was rejected by the New York Court of Appeals in *People v. Scarbor-*

---

**7.** N.Y.Penal Law § 15.05(3) defines "recklessly" as follows, in relevant part:

A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation....

*ough,* 49 N.Y.2d 364, 426 N.Y.S.2d 224, 402 N.E.2d 1127 (1980). Instead, the court stated the relevant inquiry as follows:

[I]f, on the whole record, there is not some identifiable, rational basis on which the jury could reject a portion of the prosecution's case which is indispensable to establishment of the higher crime and yet accept so much of the proof as would establish the lesser crime, then the lesser included offense may not be submitted.

*Id.,* 49 N.Y.2d at 369–70, 426 N.Y.S.2d at 227, 402 N.E.2d at 1130. The test is not whether "any view" of the evidence would support a jury's determination that the defendant did in fact commit the lesser, but not the greater, offense; the test is whether a "reasonable view" of the evidence would support such a determination. *Id.,* 49 N.Y.2d at 373, 426 N.Y.S.2d at 229, 402 N.E.2d at 1132. Thus, "[w]here ... examination of the record discloses no identifiable basis on which a jury might reasonably differentiate between segments of the proof and 'charging the lesser included offense would force the jury to resort to sheer speculation,'" no charge is required. *Id.,* 49 N.Y.2d at 371, 426 N.Y.S.2d at 228, 402 N.E.2d at 1131 (quoting *People v. Discala,* 45 N.Y.2d 38, 43, 407 N.Y.S.2d 660, 664, 379 N.E.2d 187, 190 (1978). "[F]undamentally, the jury should not be permitted to choose between the crime charged and some lesser crime where the evidence essential to support a verdict of guilt of the lesser necessarily proves guilt of the greater crime as well." *People v. Discala, supra,* 45 N.Y.2d at 43, 407 N.Y.S.2d at 664, 379 N.E.2d at 191.

Under New York law, the distinction between first degree manslaughter, for which Petitioner stands convicted, and the lesser crime of second degree manslaughter is that the former requires an intent to cause serious physical injury, *see* N.Y.Penal Law § 125.20(1), note 5, *infra,* while the latter concerns merely causing the death of another recklessly. *Compare* N.Y.Penal Law § 125.-20(1), note 5, *infra, with* § 125.15(1), note 6, *infra.* "Thus, a prima facie case of second degree manslaughter in New York entails 'the creation of a substantial and unjustifiable risk; an awareness and disregard of the risk on the part of defendant; and a result-

ing death.'" *Harris v. Scully, supra,* 779 F.2d at 880–81 (quoting *People v. Licitra,* 47 N.Y.2d 554, 558, 419 N.Y.S.2d 461, 463, 393 N.E.2d 456, 458 (1979)).

Here, there is no view of the evidence which could support a conviction of second degree manslaughter but not a conviction of first degree manslaughter. There was eyewitness testimony that Petitioner repeatedly hit the decedent in the head with a board, and forensic evidence and testimony established that the cause of death was cerebral contusions due to head trauma (T. 507, 510). Moreover, Petitioner admitted at trial that he intentionally hit Keith Sylvester with a board "two or three" times (T. 580), and Petitioner's only other witness testified that he saw Petitioner pick up a stick and hit Keith Sylvester (T. 535–37).

Thus, even if the jury rejected the prosecution's case in its entirety and believed only the defense witnesses, the evidence is inconsistent with the notion that Petitioner swung the board recklessly at the decedent.

Viewing the evidence in the light most favorable to the Petitioner, the evidence established that Petitioner swung the board intentionally in an attempt to repel his attacker. It is clear that a claim of justification does not negate the intent to kill or cause serious physical injury. *Harris v. Scully, supra,* 779 F.2d at 879–80. There is no challenge on this petition to the trial court's charge on self-defense or to the jury's rejection of Petitioner's self-defense claim.

Several Second Circuit cases present similar facts. In *Harris v. Scully, supra,* the petitioner killed his brother in a fight outside of their house, after the victim had assaulted their mother. The evidence showed that petitioner told the police he would kill the victim if he returned to the house, he concealed a knife in his sleeve before following the victim out of the house, and he attacked and stabbed the victim four times while he was on the ground.

The Court found that "[s]uch evidence points not toward recklessness but rather to an intent to cause [the victim] serious physical injury." *Id.,* 779 F.2d at 881. The Court held that the trial court's denial of the peti-

tioner's request to charge the lesser included offense of second degree manslaughter did not violate his due process rights.

The Second Circuit case of *Rice v. Hoke, supra,* is also instructive. There, the Court upheld the state court's refusal to charge second degree manslaughter. After an altercation on the street, the defendant told the victim that he would be back, and then ran to an apartment to retrieve a loaded gun. The defendant then returned to the street, located the victim and fired the gun five times at close range. The Second Circuit found that the shooting was the result of deliberate acts.

In *Campaneria v. Reid, supra,* the Second Circuit was again confronted with a habeas corpus petition based on failure to instruct the jury on the lesser included offense of second degree manslaughter. There, according to the petitioner's own testimony, petitioner intended to shoot the victim. The Court did not credit petitioner's argument that he did not intend to kill the victim, finding instead that "[a]n intentional shooting, even absent the specific intent to kill required for murder in the second degree, is not mere recklessness. An intent to shoot another is, by its nature, an intent to cause another serious physical injury." *Id.,* 891 F.2d at 1022.

The cases cited by Petitioner do not require a different result. None of these cases involve the conduct presented here—*i.e.* intentionally swinging a board at the victim's head. Furthermore, many of the cases cited by Petitioner were decided prior to the New York Court of Appeals 1980 decision in *People v. Scarborough, supra,* and relied on the old rule that "a refusal to charge a lesser-included crime is warranted only where every reasonable hypothesis but guilt of the higher crime is excluded." *People v. Santiago,* 70 A.D.2d 539, 416 N.Y.S.2d 279 (1st Dept.1979); *see, e.g., People v. Usher,* 39 A.D.2d 459, 336 N.Y.S.2d 935 (4th Dep't 1972), *aff'd without opinion;* 34 N.Y.2d 600, 354 N.Y.S.2d 952, 310 N.E.2d 547 (1974); *People v. Tai,* 39 N.Y.2d 894, 386 N.Y.S.2d 395, 352 N.E.2d 582 (1976).

The other cases cited by Petitioner are distinguishable on their facts. *See, e.g., People v. Davis,* 142 A.D.2d 791, 530 N.Y.S.2d 685 (3rd Dept.1988) (six stab wounds inflicted in struggle between victim and defendant); *People v. Cruz,* 126 A.D.2d 495, 511 N.Y.S.2d 19 (1st Dept.1987) (victim assaulted defendant with a gun, which went off during ensuing struggle).

In any event, under the standards applied in the federal habeas cases cited above, the trial court's refusal to charge the jury on manslaughter in the second degree does not amount to so fundamental a defect as to cause "a complete miscarriage of justice." *Tata v. Carver, supra,* 917 F.2d at 671. As discussed above, the jury was given an alternative to finding Petitioner guilty of second-degree murder. Furthermore, this Court should refrain from issuing a ruling which would have the effect of vacating the highest state court's approval of the procedures followed in the trial of Petitioner's case.

Accordingly, it was not a denial of due process for the trial judge to refuse to instruct the jury on second degree manslaughter.

## II. Jury Instruction on Sole and Accessory Liability.

Petitioner's second claim is that the trial court erred when it instructed the jury that it could convict Petitioner as the lone perpetrator of the crime. Petitioner argues that because he was charged in the indictment with committing intentional murder and related crimes while acting in concert and being aided and assisted by another pursuant to an accessorial liability theory, he was unprepared to defend against a lone perpetrator charge and therefore was denied due process.

Under the fifth amendment, a defendant cannot be convicted of an offense different from that which was included in the indictment returned by a grand jury. *Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960); *Ex parte Bain,* 121 U.S. 1, 10, 7 S.Ct. 781, 786, 30 L.Ed. 849 (1887); *United States v. Helmsley,* 941 F.2d 71, 89 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1162, 117 L.Ed.2d 409 (1992). Once an indictment is

returned, the charges contained therein may not be amended by the court or by the proof at trial. *Stirone v. United States, supra,* 361 U.S. at 215–16, 80 S.Ct. at 272.

An amendment of the indictment occurs when the charging terms are altered, either literally or constructively, while a "variance" occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment. *United States v. Weiss,* 752 F.2d 777, 787 (2d Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985). Variances between facts charged and facts proved are subject to the harmless error rule, and require a showing of prejudice to the defendant, while constructive amendments are generally considered prejudicial *per se. Id.*

However, a conviction will be sustained in the face of variances between the indictment and the proof "as long as the proof upon which [the conviction is] based corresponds to an offense that was clearly set out in the indictment." *United States v. Miller,* 471 U.S. 130, 136, 105 S.Ct. 1811, 1815, 85 L.Ed.2d 99 (1985). It is not "an unconstitutional amendment to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it...." *Id.* at 144, 105 S.Ct. at 1819. A defendant is therefore deprived of his fifth amendment right to be tried on the charges returned by a grand jury "if the prosecution's proof or theory constitute a modification at trial of an *essential element* of the offense charged." *United States v. Weiss, supra,* 752 F.2d at 787 (emphasis added).

In the instant case, the proof presented to the jury upon which Petitioner was convicted corresponded to the offenses clearly set out in the indictment, as did the court's charge. Petitioner was undeniably on notice that he could be tried either as a principal or an accomplice for the crimes charged, "a distinction which for charging purposes is, in any event, only academic." *People v. Doles,* 165 A.D.2d 689, 690, 564 N.Y.S.2d 15, 16 (1st Dept.1990), *app. denied,* 78 N.Y.2d 921, 573 N.Y.S.2d 474, 577 N.E.2d 1066 (1991); *see also People v. Duncan,* 46 N.Y.2d 74, 79–80, 412 N.Y.S.2d 833, 837, 385 N.E.2d 572, 575 (1978), *cert. denied,* 442 U.S. 910, 99 S.Ct. 2823, 61 L.Ed.2d 275 (1979) ("There is no distinction between liability as a principal and criminal culpability as an accessory and the status for which the defendant is convicted has no bearing upon the theory of the prosecution.").

Moreover, the court's refusal to charge the jury that Petitioner's brother *alone* could have caused Keith Sylvester's death was based on the considerable evidence, including eyewitness testimony and Petitioner's admission, that Petitioner—not his brother—hit Keith with the board and cut his face with a blade. In light of this evidence, the court's refusal to give such a charge could not have resulted in surprise or prejudice to Petitioner's defense.

Thus, neither the evidence presented at trial nor the instructions given to the jury altered any of the essential elements of the offenses with which Petitioner was charged in the indictment, or the lesser included offenses for which he was convicted. Accordingly, there was no violation of his fifth amendment right to be tried only on the charges contained in the indictment returned by the grand jury.

### CONCLUSION

For the reasons set forth above, the petition for habeas corpus must be dismissed and final judgment entered in favor of Defendant. Pursuant to 28 U.S.C. § 2253, a certificate of probable cause is granted. *Lozada v. Deeds,* 498 U.S. 430, 111 S.Ct. 860, 112 L.Ed.2d 956 (1991); *Grune v. Coughlin,* 913 F.2d 41 (2d Cir.1990).

**SO ORDERED.**